HAMER *et al.*, *Plaintiffs in Error*, v. COOK.

Division Two, December 7, 1893.

1. **Jurisdiction:** PRESUMPTION: COLLATERAL ATTACK. Lack of jurisdiction over the persons of defendants in an action in the circuit court by a trustee to construe a will, declare a trust and to procure an order of sale of land for the support of the widow and minor heirs of the testator cannot be predicated of the mere silence of the record entry of the judgment as to the service of summons on such defendants in ejectment by such defendants to recover their interest in the lands sold under such judgment.

Hamer v. Cook.

2. ———: ———. Where such record entry recites the appointment of guardians *ad litem* for minor defendants, the presumption of jurisdiction exists as well with regard to them as to the adults.

3. ———: SELLING LAND TO SUPPORT MINORS: EQUITABLE JURISDICTION. The circuit court under its general jurisdiction as a court of chancery had jurisdiction of such action and the county and probate courts did not have exclusive jurisdiction to sell the land for the support and education of the minors heirs.

4. ———: SHERIFF'S SALE: RENEWAL ORDER. Where the sheriff, under an order of sale in such case, sold part of the land and reported it to the court, and then sold the remainder of the land within five years from date of the order, such sale was not void, because there was no renewal order.

*Error to DeKalb Circuit Court.*—HON. O. M. SPENCER, Judge.

AFFIRMED.

*S. G. Loring* for plaintiffs in error.

(1) There was no question in the case that Lewis Hamer was the common source of title. It was not necessary for the plaintiff to show title in him. *Finch v. Ullman*, 105 Mo. 263. (2) The court had no jurisdiction over the subject-matter of the action. General Statutes, 1855, p. 1231, sec. 10; *Abernathy v. Moore*, 83 Mo. 69; *Henderson v. Henderson*, 55 Mo. 544; *Hope v. Blair*, 106 Mo. 92. (3) The petition filed by the plaintiffs in that case did not state facts sufficient to constitute a cause of action against them. General Statutes, 1855, p. 1231, sec. 10; *Brown v. Shode*, 27 Mo. App.' 355; *State to use v. Bacon*, 24 Mo. App. 403; *State ex rel. v. Griffith*, 63 Mo. 548. (4) These two defects are not cured by a verdict and judgment, and where it appears from the whole record that the court had no jurisdiction over the person or subject matter, the judgment is void and will be so treated in a collateral

·proceeding. *Hope v. Blair*, 105 Mo. 92; *Adams v. Cowles*, 95 Mo. 507; *Brown v. Wooley*, 64 Mo. 548. ·(5) Jurisdiction of a court is the power to hear and ·determine a cause. It is *coram judice* whenever a cause is presented which brings this power into action. If the petitioner states such a cause in his petition that on demurrer the court would render judgment in his favor, it is an undoubted case of jurisdiction.. Before this power can be affirmed to exist, it must be made to appear that the law has given the tribunal capacity to entertain the complaint against the person or thing sought to be changed or affected; that such complaint has been ·preferred, and that such person or thing has been properly brought before the tribunal to answer the ·charge therein contained. Freeman on Judgments, [3 Ed.] sec. 118; *Gray v. Bowles*, 74 Mo. 424; 1 Herman on Estoppel, etc. p. 68. (6) The circuit ·court had no probate jurisdiction and its order for the ·sale of the lands was void.

*J. F. Harwood* and *Brown & Imel* for defendant in ·error.

(1) The record does not raise a question of juris·diction of the DeKalb circuit court over the persons of ·the plaintiffs, to this suit at the time the decree was rendered against them in 1863. (2) "Nothing shall be ʻintended to be out of the jurisdiction of the superior court but that which specially appears so." *McClanahan ·v. West*, 100 Mo. 309–320, and cases cited; *Adams v. ·Combes*, 95 Mo. 501. And in case of the minors it will be presumed that they were duly served, from the fact ;that a guardian *ad litem* was appointed and filed his ·answer. *McClanahan v. West, supra*. (3) The circuit ·court as a court of chancery had jurisdiction to render ·the decree under which the land was sold. Story's

Equity Jurisprudence [12 Ed.], secs. 1327 *et seq.* and 1357 *et seq.* "If the law confers the power to render a judgment or decree, then the court has jurisdiction; what shall be adjudged between the parties, and with which is the right of the case is judicial action by hearing and determining it." *Rhode Island v. Massachusetts*, 12 Peters, 657–718; *Grignon's Lessee v. Astor*, 2 How. 319–338; *Hope v. Blair*, 105 Mo. 85–94. (4) The sale was not void because of the fact of no renewal order. *Hughes v. Hughes*, 72 Mo. 137; Revised Statutes, 1855, p. 1116; *Blodgett v. Perry*, 97 Mo. 263; *State, etc., v. Co. Ct.*, 98 Mo. 362.

GANTT, P. J.—This is an action of ejectment brought to the April term, 1887, of the DeKalb circuit court for possession of three undivided sevenths of two hundred acres of land in said county, described as the west half of the southwest quartion of section 35 in township 59, and the west half of the northwest quarter and the southeast quarter of the northwest quarter of section 2 in township 58, all in range 31. Both parties claim under one Lewis Hamer, who died in 1853, seized of the lands in controversy, together with eighty acres of other land in the same county (all of which he acquired in 1852), leaving eight children, one of whom died soon afterwards, unmarried and without issue. The other seven are still living. Five of these children were minors at home at the time of the death of their father, three of whom became of age before June 27, 1860.

Lewis Hamer left a will, the material provisions of which are as follows:

"I give and bequeath unto my beloved wife, Susannah Hamer, all of my property and estate, real, personal and mixed, that may be remaining after the payments of my just debts and funeral expenses, dur-

ing her natural life, as a support and means of maintenance of the said Susannah Hamer, and also for the further purpose of enabling the said Susannah Hamer to raise, support, maintain and educate such of my children as are under the age of twenty-one years, and after the death of the said Susannah Hamer, it is my will that of my real estate hereby bequeathed to the said Susannah Hamer, and such of my personal estate hereby likewise bequeathed, as may be remaining at the death of the said Susannah Hamer, be equally divided among all of my children, except that I have advanced to my son, Andrew Hamer, $50, it is my will that the sum be added to the general mass of property to be thus divided, and to charge to my said son Andrew in said division, so as after counting the said advancement to my said son Andrew, and charging him therewith, to render the shares of all of my said children equal; and lastly, I do hereby appoint and constitute my beloved wife, Susannah Hamer, sole executrix of this, my last will and testament."

The plaintiffs on the trial proved title in Lewis Hamer to the northwest quarter of the northwest quarter, and the southeast quarter of the northwest quarter of section 2, and introduced a deed from Andrew Hamer and wife to Lewis Hamer for all the remainder of the lands in controversy, and proved that in 1852 said Lewis took possession of all of the said land, and remained in possession until his death; that his widow, Susannah Hamer, who afterwards married one William Daken, continued to reside on the land until 1857 or 1858, when she removed to Maysville, where she resided until her death, which occurred July 22, 1883; that defendant had been in possession of all the land for about twenty years, and the value of the monthly rents and profits. They also introduced the will of Lewis Hamer, and proved that plaintiffs, Andrew Hamer,

Mary V. Busby and Sarah Chute were his children.

The defendant introduced a sheriff's deed from Daniel Ransom, sheriff of DeKalb county, duly acknowledged in open court, on the twentieth. day of March, 1868, which recited that "on the ninth day of September, 1863, a decree and order of sale was ordered and made in the circuit court of the county of DeKalb, in favor of William Daken and Susannah Daken, and against Andrew Hamer, Jerome Hamer, Stephen Hamer, Jessie Hamer, Thomas A. Busby, Mary Busby, Sarah Hamer, and Susannah Hamer, for the sale of the lands in controversy (describing them), formerly owned by Lewis Hamer, deceased, a copy of which said decree and order of sale  *  *  *  was, on the fourteenth day of February, A. D. 1868, issued or made out by the clerk of the said court, on the fourteenth day of February, A. D. 1868, said copy of said decree and order of sale was to me, the sheriff of the county of DeKalb aforesaid, delivered."

The deed then recites all the facts relating to notice and sale upon the terms mentioned in the order which would be necessary in case of a sale under execution; that Ira Brown was the highest and best bidder at the price and sum of $3,000, the payment of the purchase price, purports to convey to said Brown all the right, title, interest and estate which the said Lewis Hamer, at the time of his death, or the said parties since his death had or have of, in and to the said real estate. The defendant proved that all the right, title and interest of said Brown in and to said lands had, on the fifth day of May, 1869, become vested in defendant.

The decree of the DeKalb circuit court, under which the sheriff's sale was made, was introduced in evidence. It was made and entered on the ninth day of September, 1863.

"William Daken and Susannah, Plaintiffs,

v.

"Andrew Hamer, Jerome Hamer, Stephen Hamer, Jessie Hamer, Thomas A. Busby and Mary V. Busby, his wife; Sarah Hamer and Susannah Hamer, Defendants.

"Now on this day comes here into court the plaintiffs, by their attorney, and the defendants, although being solemnly called, come not, but make default, and this cause being submitted to the court for a hearing, and the court on hearing the evidence, and being fully advised in the premises, orders and decrees that a sale be made of the real estate of Lewis Hamer, deceased, former husband of Susannah Daken, the plaintiff in this case; that is to say, the following real estate described in the will of the said Lewis Hamer, deceased, to-wit: The northwest fourth of the southwest fourth of section twenty-six and the southwest fourth of the northeast fourth of section sixteen, and the west half of the southwest fourth of section No. thirty-five, all in township No. 59 and of range thirty-one, and the west half of the northwest fourth and the southeast fourth of the northwest fourth of section No. two, township fifty-eight, range thirty-one, and it is ordered and adjudged by the court that the real estate above described be sold upon the following terms, to-wit: Terms of sale to be paid in money; that is, one-third to be paid in cash, one-third in six months and one-third in twelve months, the purchaser or purchasers thereof to give bond with approved security."

The plaintiff objected to the reading of the said last order in evidence in this case, for the reason that said order was irrelevant, incompetent, immaterial evidence, and because, as shown by said order, it was

not such a final judgment or decree in said case upon which to base the sale of the land therein described. The court overruled each and all of the said objections and permitted the defendant to read the said order in evidence in this case. To which action of the court in overruling the plaintiff's said objections and permitting said order to be read in evidence the plaintiffs at the time excepted.

At the March term, 1862, the court made the following order in the said case:

"The court appoints William Moore guardian *ad litem* for Sarah and Susannah Hamer, minor defendants. Guardian *ad litem* files his answer, and the cause is continued until the next term of this court."

At the March term, 1865, the court made an order in said cause, "that the sheriff of DeKalb county proceed to advertise and sell, as the law directs, the land described in a decree of this court in the above entitled cause at the September term, A. D. 1863, in accordance with said decree."

At the March term, 1865, the records show that the sheriff filed a report of the sale of other lands mentioned in the decree, and he was ordered to pay the proceeds to the parties entitled thereto. Another record entry introduced shows that at the September term, 1866, the sheriff filed a report of a further sale of some of said real estate and was ordered to pay the proceeds to the parties entitled to the same. It was admitted that all the files and papers in said cause were destroyed at the burning of the DeKalb county courthouse in 1878.

The plaintiffs, to further sustain the issues on their part, introduced evidence tending to prove that in the year 1860, and prior to the September term, 1860, of said circuit court, a true copy of an original writ of summons in the said case of William

Daken and Susannah Daken against Andrew Hamer *et al.*, together with a true copy of the original, and only petition filed by the plaintiffs in said case, both duly certified under the hand of the clerk and seal of the said circuit court, was served upon the plaintiff, Mary Busby, by the sheriff of Putnam county, Missouri. The plaintiff then read in evidence the said writ of summons and said copy of said petition. Which said writ of summons is in words and figures following, viz:

"STATE OF MISSOURI, } ss.
"County of DeKalb. }

"The state of Missouri to the sheriff of Putnam county, greeting:

"You are hereby commanded to summons Mary V. Busby that she be and appear at our DeKalb circuit court, before the judge thereof, at the court house in Maysville, on the first day of the next term of said court, to be begun and held on the 3d day of September, 1860, then and there to answer the petition of William Daken and Susannah Daken, his wife, and have you there this writ:

Witness, Robert A. Hewitt, clerk of the circuit court of DeKalb county, with the seal thereof affixed at office in Maysville, this 27th day of June, A. D. 1860.

"[SEAL] R. A. HEWITT, Clerk.

Which said petition was, and is, in words and figures following, viz.:

"William Daken and Susannah Daken
*v.*
"Andrew Hamer, Jerome Hamer, Stephen Hamer, Jessie Hamer, Thomas A. Busby and Mary Busby, his wife, Sarah Hamer and Susannah Hamer, Defendants.
} "In the Circuit Court of DeKalb County, Mo. March Term, 1860.

"The plaintiffs state that the plaintiff, Susannah

Daken, was the widow of Lewis Hamer, late of said county, deceased, and that since the death of said Lewis she has intermarried with, and is now the wife of, the plaintiff, William Daken, and that the defendants, Andrew Hamer, Jerome Hamer, Stephen Hamer, Jessie Hamer and Mary V. Busby, who intermarried with, and is now the wife of, the defendant, Thomas A. Busby; and Sarah Hamer and Susannah Hamer are the children of the said Lewis Hamer, deceased; that the said Lewis Hamer, by his last will and testament, duly executed and admitted to probate by the court of said county, on the 4th day of October, 1852, a certified copy of which is hereto annexed, did devise and bequeath unto the plaintiff, Susannah Daken, then Susannah Hamer, all of his property, and estate, real, personal and mixed, that might be remaining after the payment of his debts and funeral expenses, during her natural life, as a support and means of maintenance of the said Susannah Daken, and also for the purpose of enabling the said Susannah Daken to raise, support, maintain and educate such of the children of the said Lewis Hamer as were under the age of twenty-one years. In which last will and testament it is further provided that after the death of the said Susannah Daken all of the real estate devised to her by said will and such of the personal estate likewise bequeathed to her as might be remaining at her death, shall be equally divided among all of the children of the said Lewis Hamer, except that as the said Andrew J. Hamer had received from the said Lewis Hamer an advancement of fifty dollars, that sum was to be added to the general mass of the property thus to be divided and be charged against the said Andrew J. Hamer in said division, so as to make the shares of all the children of the said Lewis Hamer equal.

"Plaintiffs further state that the said Lewis Hamer

was at the time of his death the owner in fee simple of the following lands, situate in DeKalb county, in the state of Missouri, to-wit: The northwest 1-4 of the southwest 1-4 of sec. 26, and the southwest 1-4 of the northeast 1-4 of sec. 16, and the west 1-2 of the southwest 1-4 of sec. 35, all in Twp. 58, R. 31, and the west 1-2 of the northwest 1-4 and the southeast 1-4 of the northwest 1-4 of Sec. 2, Twp. 58, R. 31; that the said Lewis Hamer left but little personal property, all of which had been consumed and expended in supporting, maintaining and educating the children of the said Lewis Hamer under the age of 21 years, that two of said children, to-wit: the defendants, Sarah Hamer and Susannah Hamer, are yet under 21 years of age, the said Sarah Hamer being 13 years old and the said Susannah Hamer 11 years old, both of whom remain uneducated and are dependent on the said Susannah Daken for their support, maintenance and education. Plaintiffs further state that but a small portion of the real estate is improved and the balance being wild land in an unimproved state, and unprofitable, that the net profits of said land are not more than sufficient to pay the taxes on said land and keep up improvements of the same, leaving nothing for the support of the said Susannah Daken, nor for the support and education of the minor defendants, Sarah and Susannah Hamer; that plaintiffs are poor, and the plaintiff, Susannah Daken, is without the means of supporting herself or supporting or educating the said defendants, Sarah and Susannah Hamer, and that the said defendants, Sarah and Susannah Hamer, have no property out of which they can be supported and educated, and that the intentions of the said testator and the purpose of the said will, as expressed in the same, cannot be carried out and effectuated without a sale of said real estate; whereupon plaintiffs pray that a

judgment of this court be rendered enforcing the trust created by, and contained in, said will, and declaring the mode and manner of enforcing the same; that all of said real estate be sold and converted into money, and that said money be paid over to the said Susannah Daken upon security being given to refund the same to defendants at her death, or that the same be loaned out under the directions of the court, and the interest accruing on the same be paid over to the said Susannah Daken for the purpose of supporting her, and also for the purpose of supporting and educating the said Sarah Hamer and Susannah Hamer and for such other and further relief as plaintiffs may be entitled, the premises considered.

"ISAAC SHAMBAUGH,<br>"Attorney for plaintiffs."

"William Daken, one of the plaintiffs in the above entitled cause, for himself and as agent for his coplaintiffs, makes oath and says that the above petition and the matters therein as stated he believes to be true.

"WILLIAM DAKEN.

Subscribed and sworn to before me February 7, 1860.

"R. A. HEWITT,<br>"Clerk."

The court sustained a demurrer to the evidence, and, plaintiffs having filed their motion for a new trial in due time, it was overruled and they bring their writ of error.

I. This action is prosecuted on the assumption that the judgment and sale under which defendant claims title are void and hence can be assailed in this collateral proceeding. It appears from the uncontroverted evidence that the judgment roll, containing all the original papers in the cause of William Daken and wife against

Andrew Hamer and others, was burned when the court-house was destroyed, and we are left to the recitals in the judgment ordering the sale to determine the jurisdiction over the persons of defendants in that case.

The record entry does not recite the service upon the several defendants; but want or jurisdiction over the persons of the defendants in that suit cannot be predicated upon this mere silence of the record entry. That action was pending in the circuit court of DeKalb county, a court of general jurisdiction both at law and in equity, and nothing shall be intended to be out of its jurisdiction, save that which affirmatively appears to be so. *McClanahan v. West*, 100 Mo. 309. And this presumption obtains as well with regard to the minors as to the adults, from the entry appointing guardians *ad litem* for them. *McClanahan v. West, supra.*

II. But it is urged that the circuit court of DeKalb county had no jurisdiction of the subject-matter of the action, which resulted in the order of sale. Plaintiffs correctly concede that if it can be made to appear that a cause of action was presented to the circuit court over which it was given jurisdiction by the law then in force, then it matters not how erroneously that cause was stated, nor that the demurrer would have been sustained on account of its defective statement, it would still not be void, but they assert that the petition showed a want of jurisdiction in this, that it was a proceeding to sell lands for the education of the minor children of Lewis Hamer of which the county court had exclusive jurisdiction.

The plaintiffs in that action, it will be seen, averred the execution of a last will by said Lewis Hamer, and the creation thereby of a trust in the property devised, and bequeathed by him for the support and maintenance of his widow and minor children. It

then avers that the property yields no returns; that the widow is without the means to support herself and maintain and educate the minor children, and prays the court to declare and enforce the trust in the will, and sell said lands. It is confidently asserted by plaintiffs that the county court of DeKalb county alone had jurisdiction to sell these lands for education of these minors, but a careful reading of the petition will, we think, disclose that the purpose of the petition was to convert the real estate into money, which would yield a fund with which the widow "could raise, support, maintain and educate the minor children and herself."

It was a part of the ancient and well defined jurisdiction of the courts of chancery to construe wills and declare the limitations of trusts created thereby, and the creation of our county and probate courts has not divested them of this power. *Church v. Robberson*, 71 Mo. 326. And it is a familiar rule that a court of equity will never permit a trust to fail merely for the want of a trustee, and if no other trustee is designated, the courts of equity will take upon themselves the execution of the trust. *Bank v. Chambers*, 96 Mo. 459. Again, it is the practice of the court of chancery to permit guardians, under the direction of those courts to convert real property into personalty, and personalty into realty. *Matter of Salisbury*, 3 Johns. Chancery Reports, 347; *Ex parte Jewett*, 16 Ala. 409; Story's Equity Jurisprudence [13 Ed.], secs. 1058, 1059, 1060, 1357.

Under the allegation of the petition, then, the circuit court of DeKalb county was asked as a court of equity to construe a will, declare a trust, and enforce it, by a sale of these lands. In other words, it was called upon to hear and determine a cause, the subject matter of which was clearly within the general jurisdiction confided to it, by our laws, and it was asked to

exercise it over this particular subject-matter. Having, then, the parties to be affected before it by virtue of its process, and the cause being one that it might lawfully entertain, it matters not that the petition was inartistically drawn, or that its judgment might have been reversed upon appeal, or writ of error, its judgment is, most clearly, not void, and plaintiffs cannot maintain their action of ejectment. This we regard as now fully and finally established in this court and elsewhere. *Hagerman v. Sutton*, 91 Mo. 519; *Rosenheim v. Hartsock*, 90 Mo. 357; *Gray v. Bowles*, 74 Mo. 419; *Lingo v. Burford*, 112 Mo. 149; *Union Depot Co. v. Frederick*, 117 Mo. 138.

III. The remaining contention, that the sheriff's sale was void because there was no renewal of the order to sell, is equally untenable. It is assumed that it was a statutory partition, and, hence, that a renewal order was necessary; but as we have seen, it was an equitable proceeding, and the judgment was ample authority for the sheriff to sell until all the land was sold and the execution could issue, as it did within five years after the entry of the judgment. 2 Revised Statutes, 1855, p. 904, sec. 12.

It follows that as the judgment was not open to collateral attack, and the sale was made within the time prescribed by statute, the circuit court very properly sustained the demurrer to the evidence. No question of equity is involved in the record. We are not called upon to investigate any misappropriation of the fund derived from the sale. The judgment is affirmed. BURGESS and SHERWOOD, JJ., concur.