# TALBOT et al., Appellants, v. ROE et al.; TALBOT et al., Appellants, v. HOLLAND et al.

### Division Two, January 9, 1903.

1. **Suit to Enforce Vendor's Lien:** NECESSARY PARTIES. Where one has conveyed land to a trustee for the use and benefit of his wife, such trustee and wife are not necessary parties to a suit to enforce a vendor's lien against the land which existed at the time the land was conveyed to the trustee. The judgment to enforce the lien in a suit brought against the grantor in the trust deed alone is sufficient to entitle the purchaser at the execution sale under such judgment to bring an action for possession.

2. ———: ———: NOTICE. Such vendor's lien being expressed in a deed recorded at the time the grantor conveyed to the trustee, the trustee and the beneficiary had constructive notice thereof, and took subject to that lien.

3. ———: ———: SUBSEQUENT RIGHTS OF BENEFICIARY. A vendor's lien reserved in the deed is in the nature of an equitable mortgage, and in law is governed by the same rules as a recorded mortgage executed according to the statute, and if the grantee subsequently conveys such lands while such lien is existent to a trustee for the use and benefit of his wife, the only effect of a failure to make her and the trustee parties to a suit to enforce the lien is to leave her right to redeem still open.

4. **Erroneous Judgment:** COLLATERAL ATTACK: NO DESCRIPTION OF LAND IN JUDGMENT: AIDED BY OTHER RECORD MATTERS. An erroneous judgment will not be held to be void in a collateral attack, and if there is enough in the whole record to show that a judgment could have been corrected after its rendition had proper steps been taken to do so, it will not be held in ejectment to be void.

5. ———: ———: ———: ———: PROCEEDING IN REM: CASE STATED. In a case to enforce a vendor's lien, the judgment was defective for failure to describe the land, and there was no personal service upon the grantee, and hence the judgment as a personal one is absolutely void, but the petition correctly described the land, and on the back of it was endorsed: "Petition for vendor's lien . . . Order of publication . . . Attach order of publication and take judgment by default for

balance, $1,512.45." *Held*, first, that the court being one of general and common law jurisdiction, if nothing appears in the record showing a lack of jurisdiction over the *res*, jurisdiction will be presumed as a matter of law when the judgment for a vendor's lien against the land described in the petition is collaterally attacked; second, that a conclusion of a lack of jurisdiction cannot be drawn from the judgment alone; third, for the purpose of enforcing a vendor's lien against the land it was only necessary to give the defendant notice by publication; fourth, as the excerpts given do not show that they constitute the whole record in the case and as the memorandum on the petition tends to show that the full record may have shown that publication was duly made and proof thereof duly filed, the judgment was not subject to collateral attack, and must be held to carry the title.

Appeal from Pettis Circuit Court.—*Hon. Geo. F. Longan,* Judge.

AFFIRMED.

*Bente & Wilson* and *Ross & Bohling* for appellants.

Pauline G. Talbot acquired her title to the land in controversy on April 10, 1861, by deed from Guilford O. Talbot to Cassius M. Clay, trustee, which deed was duly recorded on January 21, 1863. The suit to enforce the vendor's lien was filed February 16, 1863, against Guilford O. Talbot alone. (1) To affect the interest of Mrs. Talbot to this land she and her trustee, Cassius M. Clay, should have been made parties to the proceeding to enforce the vendor's lien. Perry v. Roberts, 23 Mo. 221; Leeper v. Lyons, 68 Mo. 217; 2 Jones on Liens (1 Ed.), sec. 1125. (2) The deed made in pursuance of the proceedings to enforce the vendor's lien is ineffectual in that the decree fails to describe the real estate upon which the lien is sought to be enforced. Hilliard v. Rountree, 24 S. W. 607. (3) The deed under consideration does not attempt to convey the real estate, but only the right, title, and interest of the defendant Guilford O. Talbot. To make the deed effectual as a deed to enforce a vendor's lien, the property should have been conveyed as in case of mortgages. Gaston v.

White, 46 Mo. 486. (4) Since the deed only conveys the right, title, and interest of Guilford O. Talbot, and since he had parted with all his right, title and interest in the lands prior to the institution of the suit, and the deed of his grantee, Cassius M. Clay, trustee for Pauline G. Talbot, was on record before the institution of the suit, and neither Clay, the trustee, nor Mrs. Talbot were made parties to the suit, the deed in no wise affected the interest of the plaintiff's ancestor, Pauline G. Talbot. Lewis v. Chapman, 59 Mo. 380. (5) The two deeds from John Hubbard, sheriff, to William H. Trigg are ineffectual as far as the interest of Pauline G. Talbot is concerned. It appears from the face of both of these deeds that the judgments in pursuance to which the deeds were made were rendered in favor of the State of Missouri in criminal proceedings, October, 1860; that executions were issued on these judgments on December 11, 1863, after said judgments had arrived at the age of three years. Defendants at the trial by law insisted that the lien of the State under these judgments were extended for the period of five years from their rendition. For this contention they relied upon an act approved March 17, 1863 (Laws of 1863, p. 24). (6) Plaintiff's claim is not barred by the statute of limitations. (a) Cassius M. Clay, trustee for Pauline G. Talbot, had no duties to perform under the deed in trust, and the legal title was vested by the statute in Pauline G. Talbot. Sanders on Uses and Trusts (Am. Ed.), 253; Hill on Trusts (Am. Ed.), 361; 1 Perry on Trusts (4 Ed.), sec. 306; Uphan v. Varney, 15 N. H. 463; Baker v. Greenwood, 1 Horn & Hurlstone 389; Pugh v. Hayes, 113 Mo. 424. (b) The deed in trust does not create a separate estate in Pauline G. Talbot, and her husband was not deprived of his common-law rights in the premises by said deed. Soltan v. Soltan, 93 Mo. 307; Harte v. Leete, 104 Mo. 315; Paul v. Leavitt, 53 Mo. 595. (c) Where the husband is not deprived of his common-law rights in his wife's land he is entitled to the possession of the land. Flesh v. Lindsay, 115 Mo. 1; Meier v. Meier, 105 Mo. 411; Hart v.

Leete, 104 Mo. 315; Bradley v. Railroad, 91 Mo. 145. (d)     Under the Married Woman's Act of 1889 a married woman may sue in an ejectment for possession of her real estate without joining with her husband.     R. S. 1899, sec. 4340; Arnold v. Hillis, 128 Mo. 145. The Married Woman's Act of 1889 does not apply or in any way affect the husband's common-law rights in his wife's property, which became vested prior to 1889. (e) But even if this real estate had been acquired by Mrs. Talbot since the Act of 1889, she would not have been required to sue, and the statute of limitation would not have commenced running against her until the death of her husband.     Lindell Real Estate Co. v. Lindell, 142 Mo. 61; Throckmorton v. Pence, 121 Mo. 50.     (7) "It is well settled law in this State that a purchaser of land is charged with constructive notice, notice of everything contained or recited in the recorded deeds which lie in and constitute the chain of title under which he holds."     Patterson v. Booth, 103 Mo. 402; Tydings v. Pitcher, 82 Mo. 379; Orrick v. Durham, 89 Mo. 174; McDonald v. Quick, 139 Mo. 498.

*Montgomery & Montgomery* for respondents.

(1)     The sale by the sheriff under the decree enforcing the vendor's lien against Guilford O. Talbot, divested the title out of him and vested the same in A. J. Reed, the purchaser at the sale, subject to the right of Cassius M. Clay, trustee of Mrs. Pauline G. Talbot, to redeem.     Valentine v. Havener, 20 Mo. 133; Stafford v. Fizer, 82 Mo. 396.     Such a conveyance is to be distinguished from one where the vendor reserved the title to himself and gave a bond for a deed.     In those cases the vendee never acquired anything but an equity. In this case the vendor conveyed to the vendee all the title the vendor had by a warranty deed.     Dickason v. Eby, 73 Mo. 140; Bispham's Eq., sec. 364, p. 424, and sec. 354; Bogg v. Shoat, 13 Mo. 380.     (a)     The judgment enforcing the vendor's lien is not a void judgment. The court has jurisdiction of the parties and the sub-

ject-matter.  The defendant was regularly brought in and this judgment is regular in all respects except that the clerk omitted to insert the numbers of the land in the decree, leaving a blank space therefor, but referred to the land as "the said land." It is proper to consider the antecedent record to which the judgment refers, in determining the effect of this decree, and looking at it in its entirety there can be no doubt about the lands against which the lien was enforced.    McDonald v. Frost, 99 Mo. 48.  If anything had been omitted from the decree by the clerk which was necessarily, and was intended to be, a part of the decree, the omission may be supplied by amendment after the term.  1 Black on Judgments, sec. 156.    The decree could have been amended.  The rule is that judicial proceedings that are amendable are not void.  Rosenheim v. Hartsock, 90 Mo. 365.  For this reason this decree is not subject to collateral attack.   (b) Independently of the validity of these proceedings, the record clearly shows that the plaintiffs can not maintain this action in the face of the express reservation in the deed of the vendor's lien, not shown to have been satisfied.  This lien is in all essential elements a mortgage.  The courts apply the same rules to it as regulate and govern the effect of ordinary mortgages.  The deed, in which a lien is expressly reserved for the payment of the purchase money, is made to embody an informal mortgage or defeasance and is thus prevented from being absolute so long as the price remains unpaid.  3 Pomeroy's Eq. (1 Ed.) secs. 1257 and 1258; 2 Jones on Liens, secs. 1110 to 1112-1114; Adams' Eq., 126; 2 Warvelle on Vendors, p. 728, sec. 2; Devore v. Devore, 138 Mo. 186; Dingley v. Bank of Ventura, 57 Cal. 470; Stanhope v. Dodge, 52 Md. 483; Johnson v. Houston, 47 Mo. 232.  Reed, the purchaser under the decree enforcing the lien, became entitled to all the rights and remedies of the vendor, Ream.  As between them the proceedings were valid.  One of these rights is the power to use this unsatisfied vendor's lien to protect him in his possession.  Jones v. Mock, 53 Mo. 147; Honaker v. Shough, 55 Mo. 475; Habble v. Vaughn,

42 Mo. 140; Russell v. Whitely, 59 Mo. 197; Hardwick v. Jones 65 Mo. 160; McCormack v. Fitzmorris, 39 Mo. 34; Johnson v. Houston, 47 Mo. 229; Harrington v. Fortner, 58 Mo. 469; Jackson v. McGruder, 51 Mo. 59; Howard v. Thornton, 50 Mo. 291; Jones v. Manly, 58 Mo. 563. Under these authorities the plaintiffs can not maintain this action. The title of the vendee, G. O. Talbot, was and is imperfect until this debt for the purchase money is paid. Or, "to speak more accurately, the title is incumbered." 3 Pomeroy's Eq. (1 Ed.), sec. 1258; 2 Jones on Liens, sec. 1114. (c) It can not be said that the defendants are barred by limitation from asserting this defense. They and their grantors have been in possession since 1865 continuously until this present time, and there is no evidence of payment of the debt or any presumption to that effect. Brobst v. Brock, 10 Wall. 519; Parsons v. Wells, 17 Mass. 419; Caldwell v. Palmer, 6 Lea 652. The office and purpose of the statute of limitations is to bar actions and quiet stale and vexatious suits, not to stifle just and meritorious defenses. Sebree v. Patterson, 92 Mo. 451; Michael v. Tinsley, 69 Mo. 449. (2) Every fact necessary to bring this case within the provisions of the thirty-year statute of limitation, now, section 4268, Revised Statutes 1899, is admitted by the stipulation and clearly shown by the evidence. So that this case is clearly within the line of decisions of this court culminating in Collins v. Pease, 146 Mo. 135. That decision settles every possible question which might be raised in this case. (3) Plaintiffs' cause of action is barred by the ten-year statute. The deed to Cassius M. Clay, as trustee, being for a married woman and to protect her against her husband, was not executed by the statute of uses until the husband's death, and vested the legal title in the trustee. But the evidence further shows that the trustee held this property under a trust for the separate use of Mrs. Talbot, and it was in fact an active trust. Pugh v. Hayes, 113 Mo. 424. The trustee being barred, the beneficiary and the plaintiffs in the cause are also barred. Schiffman v. Schmidt, 154 Mo. 210.

BURGESS, J.—These are actions of ejectment for two different tracts of land in Pettis county, which by agreement of the parties are to be heard together. The petitions are in the usual form. The answers admit possession, but deny the remaining allegations of the petitions. They then plead the ten and thirty-year statutes of limitations. They also aver that a vendor's lien was expressly reserved in the deed to Guilford O. Talbot, under whom plaintiffs claim title, for the purchase money, which is yet unpaid, as a bar to the action.

The reply is a general denial. Absalom Ream was the common source of title.

Plaintiffs read in evidence a warranty deed from Absalom Ream to G. O. Talbot dated February 1, 1860, conveying the land in fee, but reserving a lien therein to secure the payment of $1,500 of the purchase money, due November 10, 1860, evidenced by the note of the grantee therefor, dated August 10, 1859.

Plaintiffs next read in evidence a deed from Guilford O. Talbot (who was admitted to be the same party as the grantee in the foregoing deed) to Cassius M. Clay of Madison county, Kentucky, "trustee for Pauline G. Talbot." No trust is set out in the deed any further than that shown by the words, "trustee for Pauline G. Talbot." The consideration is expressed to be the sum of $3,279.75, received of said Clay, "trustee as aforesaid," through A. Gallatin Talbot, of Boyle county, Kentucky, and the further sum of $240 of one C. M. Smith, and the sum of $1,130.25, to be paid the grantor by said trustee. Dated April 10, 1861. The deed conveys the premises in question with covenants of warranty.

By stipulation, it was agreed that Guilford O. Talbot entered into the possession of the premises in controversy, but that when he left Missouri the militia compelled him to vacate the premises; that they then took possession thereof and kept possession until the fall of 1865 when they were ousted by J. M. C. Weathers. Weathers went into possession under the deed of his grantor, A. J. Reed, at its date. The militia who held

prior to Weathers, claimed under no one, but were simply trespassers.

It was also admitted that neither the plaintiffs nor their ancestors, nor anyone claiming under them or any of them, paid any taxes on the land since 1861.

By this stipulation the parties also agreed upon the rental value of the premises and the damages.

The plaintiffs further proved that Guilford O. Talbot left Pettis county in 1861, and went into the army, and his wife went back to Kentucky. That Mr. Talbot died March 31, 1896, and his wife, Mrs. Pauline G. Talbot, died July 15, 1897, and that the plaintiffs are the heirs at law of the said Guilford O. Talbot and Pauline G. Talbot.

The plaintiffs proved by a number of witnesses that Mrs. Pauline G. Talbot owned a separate estate devised to Cassius M. Clay as her trustee by her grandfather, Green Clay. That the money with which the land in controversy was purchased came to Cassius M. Clay, the trustee of Mrs. Pauline G. Talbot, under her grandfather's will, which directed the trustee to invest and manage the same, and to collect the rents, and to give her the income thereof.

The defendants to sustain the issues on their part read in evidence a sheriff's deed conveying the premises to A. J. Reed. The deed recites a judgment rendered by the circuit court of Pettis county on May 7, 1864, in favor of George Heard, assignee of Absalom Ream, for the sum of $1,312.45. Execution was issued August 4, 1865, under which the sheriff levied upon and sold "all the right, title, interest, claim and estate and property of the said Guilford O. Talbot, of, in and to," the real estate in controversy, a vendor's lien being enforced thereon. The sale was regularly made November 1, 1865, after due advertisement, the bid being $1,000.

This deed was objected to for two reasons:

1. Because the deed showed that Pauline G. Talbot was not made a party to the suit and the sale and deed could not affect her interest in the property.

2. Because the decree under which the land was

sold did not describe the land.

The objections were overruled, and plaintiff saved exceptions.

The defendants also read in evidence a sheriff's deed conveying the lands in controversy to William Trigg. This deed recited a judgment recovered by the State of Missouri for the sum of $10 on October 30, 1860, against G. O. Talbot. Execution issued December 11, 1863, delivered to the sheriff January 4, 1864, levied on the —— 1864, upon the real estate in controversy as the property of the defendant, G. O. Talbot. Sale May 6, 1864, for the sum of $25.

Plaintiffs objected to this deed for three reasons:

1.    That it showed on its face that the lien of the judgment had expired at the time of the issuance of the execution.

2.    That the execution was issued and a sale made after the rights of Pauline G. Talbot had attached.

3.    That Pauline G. Talbot was not a party to the suit under which judgment was obtained and sale made.

The objections were overruled, and defendants saved exception.

Defendant next read in evidence:

A sheriff's deed conveying the premises in controversy to William H. Trigg. This deed recites a judgment rendered by the circuit court of Pettis county on October 3, 1860, in favor of the State of Missouri, and against G. O. Talbot, for the sum of $35.35. Execution was issued December 11, 1863, and was levied on March 9, 1864, on the property in controversy. The sale was made on May 5, 1864, and the bid was $25.

Plaintiffs made the same objections as to the preceding sheriff's deed. Objection was overruled and exceptions saved.

Defendants offered in evidence a warranty deed from A. J. Reed to John M. C. Weathers, dated June 9, 1865, and a deed from William H. Trigg to A. J. Reed dated November 25, 1865, conveying lands in controversy.

The plaintiffs objected to each of these deeds for

the reason that the grantors therein, respectively, had no title to the lands conveyed and no right to make the conveyance.

It was stipulated that John M. C. Weathers went into possession of the premises in controversy under his purchase from Reed in 1865 and he and his grantees have continuously occupied the premises from and after his entry; that the defendants hold the premises in controversy under a regular chain of conveyances from said Weathers and his grantees; that defendant Roe purchased and went into possession March 15, 1884, and has continued in the peaceful and undisturbed possession thereof continually from that date to the institution of this suit.

Defendants also showed by a number of witnesses, and the fact is not controverted by plaintiffs, that John M. C. Weathers and his grantees, ever since his purchase, have each successively been in peaceable, quiet and undisturbed and continuous possession of the premises in controversy, claiming the title thereto openly, notoriously and adversely, to everybody, and none of them ever heard any question about the title to the premises, until the commencement of this litigation.

In rebuttal plaintiff read the original petition under which the decree, recited in the aforesaid sheriff's deed, was rendered. This petition was filed February 16, 1863, and is a suit by Absalom Ream against Guilford O. Talbot upon the note heretofore mentioned as described in the conveyance from Absalom Ream to Guilford O. Talbot, alleging that the same was given for a part of the purchase money of the lands in controversy, and a lien reserved in the deed therefor, praying a judgment for the amount of the note, and that the lien be enforced upon said lands and also a general prayer for relief.

The plaintiffs read in evidence an assignment by Ream to George Heard of this note, made after the institution of this suit. Plaintiffs also read the decree above referred to.

Plaintiffs asked the following instructions, which

were refused:

"1.   You are instructed that the legal title to the lands in controversy is in plaintiffs.

"2.   You are instructed that if you find for the plaintiffs you will assess their damages at the rate of $200 per year rental value from the date of the ouster, to-wit, the second day of July, 1893, and rents and profits at the rate of $200 per annum, from this date, in the case in which Roe and Roe are defendants, and assess damages and rents and profits in the Holland case from the same date on the basis of $125 rental value, per annum.

"3.   You are further instructed that the plaintiff claims under Pauline G. Talbot, and if you believe and find from the evidence that the said Pauline G. Talbot was a married woman at the time of the execution of the deed of Guilford O. Talbot to Cassius M. Clay, trustee for Pauline G. Talbot, to-wit, on the — day of April, 1861, and continued so to be until March 31, 1896, and that her husband, Guilford O. Talbot, departed this life on said 31st day of March, 1896, and that the said Pauline G. Talbot afterwards departed this life, and that the plaintiffs are her children, and that they brought this suit on the — day of June, 1898, then your findings must be for plaintiffs, although you may believe that neither the said Pauline G. Talbot, nor plaintiff, have paid any taxes on said lands in controversy during the thirty years next before the bringing of this suit."

Which said instructions the court refused, and to the action of the court in refusing said instructions the plaintiffs then and there duly excepted.

Whereupon, the defendants prayed the court to give the following instruction, to-wit:

"The court instructs the jury that under the pleadings and evidence in this cause, the verdict and finding must be for the defendants."

Which said instruction the court gave, and to the action of the court in giving said instruction the plaintiffs then and there duly excepted at the time.

The verdict and judgment were for the defendants,

from which plaintiffs, after an unsuccessful motion for a new trial, appeal.

As Guilford O. Talbot, on April 10, 1861, conveyed the land in question to Cassius M. Clay, trustee for Mrs. Pauline G. Talbot, it is claimed by plaintiffs that she and Clay, her trustee, should have been made parties to the action to enforce the vendor's lien against the land which existed at the time of the deed to them, and as this was not done, her rights were not affected by that proceeding.

That Clay and Mrs. Talbot might have been made defendants may be conceded, but they were not necessary parties. The question is, what were her rights under the deed from her husband to Clay as trustee for her? The deed for the land from Ream to Guilford O. Talbot, in which a vendor's lien for part of the purchase money was expressly reserved, was then upon record, and she and Clay had constructive notice thereof and took subject to it. The lien reserved was in the nature of an equitable mortgage, and governed by the same rules, from a legal standpoint, as a mortgage executed according to the statute, and duly recorded. Therefore, the only effect of the failure to make Mrs. Talbot and her trustee, Clay, parties to the suit to enforce the vendor's lien, was to leave her right to redeem still open; but this would not defeat an action by a purchaser, under a judgment to enforce the lien, for possession of the land. [Valentine v. Havener, 20 Mo. 133; Stafford v. Fizer, 82 Mo. 393.]

It is said that the deed made by the sheriff to A. J. Reed in pursuance of the proceedings to enforce the vendor's lien is insufficient to carry with it that lien so as to relate back to the time that Talbot bought from Ream, and thereby make it the prior title to that acquired by Mrs. Talbot and Clay, her trustee, under the deed from Guilford O. Talbot, because the land is not described in the judgment and decree upon which the lien is sought to be enforced. On the other hand it is said in behalf of defendants that as the sheriff's deed to Reed in express terms conveyed "all of the right,

title, interest, claim, estate and property to Guilford O. Talbot of, in and to'' the property in controversy, it was sufficient to pass to the purchaser the title to the land itself. In support of their contention plaintiffs rely upon Lawless v. Barger, 9 Bush 665, which was a direct proceeding in equity to set aside a sale of land under a decree enforcing a vendor's lien, upon the ground that the land was not described in the judgment, the only description being, "the tract of land described,in the petition," and it was held that the sale should be set aside.

Another case relied upon by plaintiffs is Hillard v. Rountree, 24 S. W. 607, which was an appeal from a judgment by default enforcing a vendor's lien, upon the ground that the pleadings did not support the judgment, and the) land was described in the judgment as :"that set out and described in the petition," and it was held that the description was insufficient to support the judgment. But this is a collateral attack upon the judgment, which is only permissible when absolutely. void. Now, in so far as the judgment *in personam* against Talbot is concerned, it is shown by the summons issued against him, that it was never served, and the court without jurisdiction over him, hence, the judgment as a personal one is absolutely void—but, is it so with respect to the land against which it was sought to enforce the vendor's lien, for which purpose it was only necessary to give Talbot notice by publication? The judgment was founded on a *note* for the direct payment of money at ten per cent interest; it says, "the same being for the purchase of the following land, to-wit:" The judgment then concludes as follows: "that a vendor's lien be enforced against the said land, and that it be sold to satisfy said judgment." The land is correctly described in the petition, the sufficiency of which is not questioned in this action.

The court being of general and common-law jurisdiction, and the records being silent, and nothing apparent thereon showing the absence or lack of jurisdict-

Vol 171 mo—28.

ion over the *res,* jurisdiction will be presumed as a matter of law when collaterally attacked, as in this case. [Howard v. Thornton, 50 Mo. 291.] But "if the whole record taken together does not show that the court had jurisdiction over the land, then the judgment is a nullity. But courts have no right to draw such conclusion from the judgment alone." [Howard v. Thornton, 50 Mo. 291.] The petition in the suit to enforce the vendor's lien was read in evidence by plaintiffs in rebuttal, and upon the back of it was indorsed, "Petition for vendor's lien. . . . Order of Publication." There was also written upon the back of it in lead pencil, "Attach order of publication and take judgment by default for bal. $1,512.45."

It will be observed that it was not shown that these excerpts from the record constituted the whole record in that case. For aught that appears, the record may have shown that publication was duly made and proof duly filed, which the memorandums upon the petition tend to show. That the judgment was erroneous is clear; but it is not void and could have been corrected after its rendition had proper steps been taken in time to do so. [Rosenheim v. Hartsock, 90 Mo. 357; Cochran v. Thomas, 131 Mo. 258; Hamer v. Cook, 118 Mo. 476; 1 Black on Judgments, sec. 156.] And was not therefore subject to collateral attack.

Our conclusion is that the sale by the sheriff under the judgment in favor of Heard, assignee of Ream, against Talbot, passed the legal title to the land in question to A. J. Reed, and, as defendants hold under that title, that plaintiffs are not entitled to recover in this action.

The conclusion reached renders it unnecessary to pass upon other questions presented by respective counsel in their arguments and briefs.

The judgment is affirmed. All of this Division concur.