S. L. MILLER, Respondent, v. MISSOURI, KANSAS
& TEXAS RAILWAY COMPANY, Appellant.

**Kansas City Court of Appeals, June 28, 1911.**

1. CARRIERS OF LIVE STOCK: Negligent Delay of Connecting
Carrier: Liability of Initial Carrier Therefor. In an action
by a shipper of cattle against a common carrier to recover
damages caused by the negligent delay of the connecting car-
rier, the facts showed conclusively that the contract of affreight-
ment was for a through shipment to Chicago, and not for the
transportation of the property only to the end of defendant's
line at St. Louis. *Held*, under the construction placed on sec-
tion 5446, R. S. 1909, that, if the receiving carrier's contract
is to transport the freight to the point of destination, it cannot
limit its liability for the negligence of the connecting carrier,
and that the receipt of freight, and issuing of bill of lading
therefor to a destination beyond its own line is prima facie
an agreement to carry it to such point, that to prevent such an
operation of the contract, it becomes necessary for the initial
carrier to stipulate that it is only to carry it to the end of its
own line.

2. ————: Authority of Agent of Initial Carrier: Contract for
Delivery to Connecting Carrier. The claim that as a mat-
ter of law, an agent at the initial shipping point had
no authority to contract to carry the stock beyond defendant's
line, and that his lack of authority appeared on the face of
the contract of affreightment is without merit, because such
a provision was a nullity. Having failed to limit his company's
liability, as he had a right to do, the statute makes the ship-
ment a contract for carriage for the entire route, or is evidence
of such a contract which is the equivalent.

3. ————: Delivery to Connecting Carrier: No Notice to Initial
Carrier Required. Where the undisputed evidence shows that
the cattle were reloaded at St. Louis, and shipped on the
original bill of lading issued by defendant, the initial carrier,
under the terms of the shipping contract, and where there was
nothing in such contract requiring shipper to give notice to
defendant of his intention to ship to Chicago, the contract can-
not be held to have terminated at St. Louis, because of plain-
tiff's failure to give such notice.

Appeal from Boone Circuit Court.—*Hon. A. H. Waller,*
Judge.

AFFIRMED.

*L. W. Hagerman* and *C. B. Sebastian* for appellant.

*Webster Gordon* for respondent.

JOHNSON, J.—This is an action by a shipper of cattle against a common carrier to recover damages caused by negligent delay in the transporation of the property. The cause is before us on the appeal of defendant from a judgment recovered by plaintiff in the circuit court.

The cattle were shipped from defendant's station at Columbia, Missouri, January 16, 1905, under a special live stock contract signed by both plaintiff and defendant. Plaintiff desired to sell the cattle and for that purpose to ship them to the market at Chicago via St. Louis, with the privilege of unloading at St. Louis stock yards to try the market at that place. The terminus of defendant's railroad is at St. Louis and to carry the cattle on to Chicago it was necessary to turn them over to a connecting carrier. The shipment was consigned to a commission company at Chicago and the contract required defendant to haul said cars consigned to Drum Com. Co., Chicago, "together with the shipper, party or parties in charge thereof from Col. (Columbia) to Chgo. (Chicago)" at the rate of nineteen cents per hundred pounds from Columbia to destination. The contract was prepared on a printed form and after the lines left for the insertion of the points of shipment and destination were the words in parentheses "Do not insert any station beyond our line." The agent of defendant testified that he had no authority to enter into a contract for the transportation of live stock beyond defendant's line and the principal contention of counsel for defendant is that the contract cannot be treated as one for a through

shipment to Chicago for the reason that the agent at Columbia had no authority to contract for such through shipment and his lack of authority appeared on the face of the contract in the parenthetical clause above quoted.

Facts opposed to this contention are as follows: Across the face of the contract were stamped the words: "Priv. Independent Stock Yards St. Louis market" which, translated, meant that plaintiff was to have the privilege of having the stock carried to the St. Louis stock yards and unloaded there in order that he might sell on that market and end the transportation if he so desired. The billing of defendant gave Chicago as the destination and the Chicago & Alton Railway Company as the connecting carrier from St. Louis to Chicago. The rate of 19 cents per hundred pounds was a through tariff rate and an arrangement existed between defendant and connecting companies operating between St. Louis and Chicago (including the Chicago & Alton Company) for the division of freight charges collected for such through shipments. Plaintiff did not find the market at St. Louis satisfactory and the cattle were reloaded and sent to Chicago over the Chicago & Alton railroad on the billing issued by defendant. The freight charges for the whole transportation were paid at Chicago by the consignee and we assume were divided between defendant and the Chicago & Alton Company in accordance with the terms of the arrangement existing between them. Defendant hauled the shipment to St. Louis in good time and the delay of which plaintiff complains occurred on the line of the connecting carrier.

The evidence discloses that the contract in question was not peculiar to this shipment but that it was the practice of defendant to enter into similar contracts with shippers who desired to ship stock to Chicago with stop-over privileges at St. Louis.

The facts detailed show conclusively that the contract of affreightment was for a through shipment to Chicago and not for the transportation of the property only to the end of the defendant's line. In the construction placed by the courts of this state on the provisions of section 5446, Revised Statutes 1909, the rule has become well settled that "if the receiving carrier's contract is to transport the freight to the point of destination, it cannot limit its liability for the negligence of the connecting carrier, and the receipt of freight and issuing a bill of lading therfor to a destination beyond its own line is prima facie an agreement to carry it to such point. To prevent such operation of the contract it becomes necessary for the initial carrier to stipulate that it is only to carry to the end of its own line." [Steamship Co. v. Railroad, 144 Mo. App. l. c. 55; Buffington v. Railway, 118 Mo. 476; Hardin v. Railway, 120 Mo. App. 203; Marshall v. Railway, 176 Mo. 480; Western Sash Co. v. Railway, 177 Mo. 641.]

Under this rule defendant is liable to plaintiff for the damages caused by the negligent delay of the connecting carrier.

"There was no provision in the bill of lading limiting the shipment by defendant to its own line; and as the animals were received by defendant and bill of lading issued for a point beyond its own line, it agreed to carry to such point. That such is the proper construction of these contracts considered with the terms of the statute has been definitely settled by the Supreme Court and Courts of Appeals." [Holland v. Railroad, 133 Mo. App. l. c. 697.]

There is no merit in the contention that we should hold as a matter of law that the agent at Columbia had no authority to contract to carry the stock beyond defendant's line. In Medicine Co. v. Railroad, 126 Mo.

App. 455, this court, speaking through BROADDUS, P. J., said:

"The provision in the bill of lading prohibiting defendant's agent from contracting for delivery of goods beyond its own route was a nullity. He was bound to receive the goods for transportation but he had the right to limit his company's liability, but, having failed to do so, the statute makes the shipment a contract for carriage for the entire route, or is evidence of such a contract which is the equivalent."

In answer to the point argued by defendant that the transportation should be treated as having terminated at St. Louis because the shipper did not notify defendant at St. Louis of his intention to ship to Chicago under the contract, we say that the undisputed evidence shows that the cattle were reloaded and shipped on the bill of lading issued by defendant and under the terms of the shipping contract. The usual course of business was followed in this instance and we find nothing in the contract that required the shipper to give such notice to the initial carrier.

The cause was tried in conformity to the views expressed and it follows that the judgment must be affirmed. All concur.