Howell v. Sherwood.

---

H. E. HOWELL, JOHN A. PATTERSON, ORIN PATTERSON and B. S. EDMONSON v. THOMAS A. SHERWOOD, Appellant.

In Banc, May 20, 1912.

1. **EJECTMENT: Common Source of Title: Doubtful Description in Prior Deeds.** If both plaintiff and defendant in ejectment claim through a common source of title, uncertainties in the description of land in prior deeds, such as whether the sign // after 41 in the description of "North 41 // east 88 poles" was really ° and therefore meant degrees instead of seconds, are out of the case, and immaterial.

2. ——————: ——————: Alleged in Answer: Established By Proof: Not Theory at Trial. Where defendant's answer averred a common source of title, and a common source is asserted in his brief on appeal, and the proof at the trial showed a common source, it will be held on appeal that there was a common source, and uncertainties in descriptions in prior deeds will not be considered.

Held, by GRAVES, J., dissenting, that no common source of title was admitted by the answer, and the case was not tried upon that theory, but was tried by plaintiffs upon the theory that they must show an unbroken good title from the Government to themselves, and being tried upon that theory the case should be disposed of on appeal upon the same theory.

3. ——————: ——————: Uncertainties in Prior Deed: Outstanding Title: Defective Deed: Equitable Title. Where there is an agreement on the common source of title, or both parties admit or assume a common source, or the evidence shows one, then (subject to exceptions not within the facts of this case) the doctrine that a plaintiff in an ejectment must recover upon the strength of his own title from the Government down is departed from and he need not go back of the common source to establish his case. In such event irregularities in conveyances anterior to the common source are common to both litigants and affect the common stem of the title and are therefore immaterial. In such case the question is whether he has a better title than defendant beginning with the common source and coming down to the time of the suit. And a chain of title prior to the common source, read into the record by defendant, did not affect the issues as between him and defendant as to the right to possession.

Held, by GRAVES, J., dissenting, that plaintiffs did not rely upon a common source, but undertook to trace an unbroken chain of title from the Government to themselves, and one of the deeds in their chain contained no words of conveyance and hence showed on its face an outstanding legal title against themselves, and as in ejectment where reliance is made upon the paper title alone plaintiffs can recover only upon a showing of a perfect legal title, each deed in the chain must operate to convey the legal title, and an instrument having no operative words conveying the land cannot be admitted on the theory that it operated to convey the equitable title.

Held, also, that an instrument which does not purport to "grant, bargain and sell," or contain any other words granting or conveying the property, does not convey the title. The habendum, though containing apt words, cannot have any effect upon an estate which is not granted.

4. **JUDICIAL NOTICE: Civil War: Lapse in Sessions of Court.** The court takes judicial notice of the historical fact that the Civil War raged with fury in the vicinity of Springfield from June, 1861, to August, 1862, and that there was a lapse in the terms of the circuit court in consequence thereof. Under the statutes (R. S. 1855, p. 539, secs. 44 to 48) this lapse merely had the effect of adjournments; and a garnishee, summoned on an execution issued on February 14, 1861, was in court until final adjournment and until interrogatories were filed at the August term, 1862.

5. **JUDICIAL SALES: Lost Files: Presumptions.** Where there is a great lapse of time and files are lost, courts will indulge very favorable presumptions to uphold judicial sales.

6. **————: Garnishee: Insufficient Return: Lost Execution: Recitals of Record: Issue of Fact.** A return of an execution issued against a judgment debtor in 1861 reciting simply: "Executed the within writ by summoning Charles Carleton as garnishee" will not support a judgment against Carleton as garnishee, since it attaches nothing in his hands, and cites him to appear at no court and at no day or term certain to answer interrogatories. But where the execution is lost, and that these were the words of the return is established by the memory of a single witness who last examined it in 1866 and testified forty years afterwards, and the old files of the case and the records show that interrogatories were exhibited against Carleton at the August term, 1862, and that an interlocutory judgment was rendered against him by default at that term and the cause continued until the next term to make inquiry of the amount due from him to the judgment debtor, and that interlocutory judgment recites that "and it appearing that the said garnishee, Charles Carleton, had been duly summoned as garnishee and has failed to answer interrogatories," and that final judgment was rendered at the January term, 1863, reciting, "And it appearing to the satisfaction of the court that Charles Carleton has been duly summoned as garnishee in this cause," it will be *held*, first, that the recitals in the record of due service on said garnishee are presumptively true, since the presumption is that courts of general jurisdiction proceed by right and not by wrong; and, second, the court cannot declare as a matter of law that the return was in the words testified by the witness, but the issue is one of fact, for the jury's determination.

7. **————: Execution: Returnable to Past Term.** An execution dated December 7, 1863, and made returnable "on the 4th Monday in January next (A. D. 1863)" is not made returnable to a day in the past, but the word "next" controls the figures "1863" and makes that impossible date read 1864.

8. ———: ———: Alias: Recital of Former Levies. An *alias* execution, with a clerk's indorsement of the amount previously collected and the amount due, need not recite former levies, when the land levied on under such former executions was sold and those writs fully executed.

9. ———: ———: ———: Judgment Satisfied by Former Execution: Interest. If by computing interest the judgment was not fully satisfied by the levy and sale under the first execution, an *alias* execution and a sale thereunder are not void.

10. ———: Sheriff's Deed: No Recital of Land Conveyed. A sheriff's deed containing an accurate recital of the judgment, execution, levy on the land in dispute (describing it), the advertisement (also describing it), the place and time of sale, and that the sheriff "did expose for sale at public auction for ready money, all the right, title, interest and estate of the said" judgment debtor "of, in and to above described real estate, and .. . . the same was stricken off and sold," and every other necessary prescribed statutory recital except that in the conveyance clause it says "I . . do hereby assign, transfer and convey to the said" purchaser, "his heirs and assigns forever, with all rights and appurtenances thereto belonging," omitting after the word "convey" to say "said land" or "said above described tract of land," is a good deed in an action at law. It did "convey" the land described above and "sold." A sheriff's deed is to be construed as other deeds; in so far as the real intendment, as gathered from the entire instrument, is to control, such deed is entitled to the value its face imports.

11. ———: Administrator's Deed: By Former Public Administrator. In 1883 public administrators were not discharged at the expiration of their official terms from the administration of estates in their hands, and hence a deed made in that year by one who is described therein as the "former public administrator of the county . . . in charge of the estate . . . " and otherwise regular on its face, conveyed the title.

12. CONSTITUTIONAL QUESTION: Untimely Raised. A challenge to the unconstitutionality of the act creating the court which tried the case comes too late if made for the first time in the motion in arrest.

13. EJECTMENT: Good Faith of Purchasers. An ejectment suit turns on the cold legal title on the application of cold law, and questions as to the good faith of purchasers under certain conveyances in the chain of title are not for consideration.

14. EVIDENCE: Letter to Defendant: Hearsay. A letter written to defendant in the present ejectment by a former execution debtor long after he lost title, is hearsay and incompetent.

15. ———: Deficient Return: Others in Substantiation. Other returns of executions made by the same sheriff, slovenly made and deficient in matter, are not competent evidence to show

that the particular return on the lost execution under which
a former garnishee and owner of the land was summoned to
court was defective.

16. **EJECTMENT: Limitations: Thirty-year Statute: Paying
Taxes.** The ejectment suit of a plaintiff who paid taxes for
one year within the thirty-year period, while in possession,
is not barred by the thirty-year Statute of Limitations.

17. **RES ADJUDICATA: Law of the Case: Issue of Fact: Re-
manded for New Trial.** Where a "judgment is reversed and
the cause remanded" the cause is remanded for a new trial;
and if the judgment (for plaintiff) was reversed because under
a finding of fact by the trial judge sitting as a jury the judg-
ment could not stand, defendant cannot compel the trial court
to accept that finding as true and render judgment for him,
although the appellate court might then have directed a judg-
ment for him; but the case, having been remanded for a new
trial, is to be tried anew. The lower court is not bound on
a fair issue of fact to the view of a former trial judge on the
weight of oral testimony. A finding by the judge in the first
trial that the oral testimony of defendant that the return on
the execution read: "Executed the within writ by summoning
Charles Carleton as garnishee" was true, is not binding on the
trial court upon a new trial after a reversal holding that a
judgment against Carleton based on that return was void,
and that in consequence a judgment for plaintiff in spite of
that finding and based on a sheriff's deed under that judgment
could not stand; but the issue as to whether in point of
fact the return read that way was a question of fact for the jury
at the second trial, when the cause has been remanded by this
court generally for a new trial.

*Held*, by WOODSON, J., dissenting, that the decision of this
court on a former appeal in an ejectment suit is the law
of the case upon the trial anew in the circuit court, and
is conclusive as to the matters adjudicated therein.

*Held*, also, that the verdict of the jury on the second trial
had the effect of setting aside the special finding of fact
by the judge sitting as a jury in the first trial, and also
the judgment of this court based on that finding; and as
the evidence on the second trial was precisely the same
on the issue of whether the return was in the words defend-
ant testified it was and that the trial judge found it was,
and the judgment for plaintiff was then reversed, that ad-
judication became the law of the case, and on the second
trial, and now in this court, the judgment should be for
defendant, notwithstanding the jury's verdict for plaintiff.

18. **EJECTMENT: Verdict: No Description of Land or Award of
Possession.** A verdict in ejectment reading: "We the jury find
the issues in favor of plaintiffs, and we assess plaintiffs'

damages at the sum of seventy-five dollars and we further find the reasonable rental value of the premises to be one dollar per month until possession is given" is sufficient and will authorize a judgment for possession of the premises described in the petition, where there is no dispute as to such description. [Distinguishing Franklin v. Haynes, 139 Mo. 311; Brummell v. Harris, 148 Mo. 430, and Benne v. Miller, 149 Mo. 228.]

Held, by GRAVES, J., dissenting, that the verdict should find that plaintiffs are entitled to a particular tract of land, describing it, and unless it does so it will not support a judgment for possession.

19. ——: ——: Judgment: Must Include Possession. In ejectment the judgment should include recovery of the premises, describing them, and an award of a writ of possession. Otherwise, it is not responsive to the pleadings and a proper verdict. A recital therein limiting plaintiff's recovery to the damages and monthly rents and profits assessed by the jury, is not sufficient.

Held, by GRAVES, J., dissenting, that the court cannot make a verdict for the jury, and one which does not authorize a recovery of the premises will not sustain a judgment.

20. ——: ——: Substituted Parties. The entry of a judgment in ejectment in favor of the original plaintiffs, instead of in favor of the substituted plaintiffs who, in accordance with the order of the court, have been substituted as parties, is an informality, which under the broad powers of the statutes (Secs. 1851, 2119 and 2120, R. S. 1899) may be corrected as of course, either in the trial court or appellate court.

21. ——: ——: Correction in Appellate Court. In suits involving titles to lands, a judgment amenable to correction in either the trial or the appellate court should be corrected in the trial court, in order that the records of the trial court as to final judgments may be complete and that writs of ouster may issue therefrom.

Appeal from Greene Circuit Court.—*Hon. Alfred Page,* Judge.

REVERSED AND REMANDED (*with directions*).

*Sherwood & Young, T. J. Delaney* and *George B. Webster* for appellant.

(1) The so-called deed from W. D. Fulbright to D. L. Fulbright is void for lack of operative words of conveyance. Becker v. Stroeher, 167 Mo. 306; McGar-

rigan v. Asylum, 145 Cal. 694; Brettman v. Fischer, 74 N. E. (Ill.) 777; Riech v. Dyer, 86 N. Y. Supp. 544. (2) The deed from D. L. Fulbright to Carleton is either totally void for uncertainty of description or it conveys but a fractional part of the land sued for. The sheriff's deed attempting to convey Carleton's interest is absolutely void because of lack of jurisdiction in the court to render judgment in the so-called garnishment proceeding against Carleton. Howell v. Sherwood, 213 Mo. 565. It is also void because it fails to convey any land. Evans v. Ashley, 8 Mo. 177; Nelson v. Broadhack, 44 Mo. 496; Tally v. Schalitz, 180 Mo. 231; Brewster on Conveyances, secs. 71 and 72. Moreover, its invalidity having been judicially declared on the former trial, that is an end of this contention. That the action of this court on its former hearing of this cause is conclusive of the issues presented by this record is demonstrated by the rule announced in: May v. Crawford, 150 Mo. 525; Hayward v. Smith, 187 Mo. 476; Taussig v. Railroad, 186 Mo. 281; Brummell v. Harris, 162 Mo. 402; Bealey v. Smith, 158 Mo. 522; Potter v. Adams, 143 Mo. 665; Sandford v. Herron, 161 Mo. 186; Gracey v. St. Louis, 221 Mo. 5. Lack of jurisdiction may be shown by secondary evidence of the contents of the lost files for the purpose of impeaching the judgment. Eaton v. Hall, 5 Met. (Mass.) 287; Parry v. Walser, 57 Mo. 172; Foulk v. Colburn, 48 Mo. 230; Ravenscroft v. Giboney, 2 Mo. 1; McClanahan v. West, 100 Mo. 321; Davis v. Montgomery, 205 Mo. 271; Land Co. v. Mining Co., 187 Mo. 434; Graham v. O'Fallen, 3 Mo. 507; Burnett v. McCluey, 78 Mo. 689; Howard v. Thornton, 50 Mo. 292. It is also void because the execution is an *alias* or renewed execution and fails to recite the issue of the former execution, the levies thereunder and the amount realized therefrom. Laws 1863, p 20; Maupin v. Emmons, 47 Mo. 308; Wood v.

Augustine, .61 Mo. 50. It is also void because issued
for costs in addition to the judgment while the judg-
ment did not carry costs. Under the statute then in
force a judgment in garnishment proceedings did not
carry costs unless specifically so directed therein. Ma-
loney v. Ass'n, 57 Mo. App. 384; R. S. 1855, chap. 12,
secs. 70 and 75, and chap. 40, secs. 6 and 32. It is also
void because satisfied by the sale under the first exe-
cution. It is also void because made returnable to a
day in the past instead of to one in the future, the
execution being issued on the 7th day of December,
1863, and made returnable to the January term, 1863.
The final judgment is also void on account of its fail-
ure to require the garnishee to give bond or pay the
money found to be due from him to the debtor into
court. Walkeen v. Johnston, 130 Mo. App. 325. (4)
The deed from S. H. Julian to H. E. Howell is void.
Because the former public administrator had no au-
thority to execute the same as such administrator. Be-
cause there was never any lawful administration
upon the estate of Lindenbower. Because the court
acquired no jurisdiction to make order of sale of the
real estate of Lindenbower, the proof of publication of
notice to creditors and others not having been filed
until after order of sale made, and it appearing from
such proof that the term of office of Barker, whose
jurat is attached to the order of publication, had ex-
pired. Fletcher v. Kite, 66 Mo. 285; 2 Chitty's Gen.
Prac., 159. Because the order of sale under which re-
newal order was made had become *functus officio*.
Because the description in the deed is too vague and
indefinite to carry title. (5) The judgment in this
case is erroneous upon its face, and void for failure
to describe the land awarded to plaintiffs. Brummel
v. Harris, 148 Mo. 430; Benne v. Miller, 149 Mo. 228.
(6) The act of the Legislature under which the trial
judge officiated is void. State v. Hill, 147 Mo. 63. (7.)

The court erred in excluding from the consideration of the jury the letter from Carleton to Sherwood written at the time of the transaction relating to the purchase of the Mt. Vernon St. property. It also erred in excluding from the consideration of the jury the returns contained on writs of attachment and executions which were issued and returned by the sheriff of Greene county within a short time prior and subsequent to the return of the execution under which plaintiff claims title. These returns were offered for the purpose of showing, in corroboration of the testimony of Sherwood, that the sheriff had at this period of time adopted a form of return which failed to comply with the mandatory provisions of the statute governing such returns. Blodgett v. Shaeffer, 94 Mo. 670; Herman v. Lacker, 99 Mo. App. 300; State v. Taylor, 126 Mo. 538; Cramer v. Hurt, 154 Mo. 119; Matthias v. O'Neil, 94 Mo. 529; Payne v. Railroad, 129 Mo. 420; Broussard v. Bernard, 7 La. 216; Reynolds' Stephenson on Evidence, p. 24, art. 13; Greenleaf on Evidence, sec. 40.

*George Pepperdine* and *Patterson & Patterson* for respondents.

(1) An instrument that acknowledges the receipt of sixteen hundred dollars to pay for a piece of land, which says that the payee shall have and hold it, he and his heirs forever, which contains a warranty of title on the part of the man securing the money and is signed, sealed and acknowledged by him, would seem to be a very lively creature of some kind, and as it is a link in the chain of appellant's title as well as that of respondents, it should have sufficient vitality to support the legal chain in this suit, considering that it was executed well onto three quarters of a century ago.

Whatever may have been the rule erstwhile, the modern rule of construction as applied to a deed is to ascertain the intention of the parties thereto, and especially the intention of the grantor. And if it appear from the instrument as a whole and the language therein that the grantor intended to part with his estate and the grantee to secure the same *in presenti* then the instrument is a deed, and conveys legal title. Linville v. Greer, 165 Mo. 380; McKinney v. Settler, 31 Mo. 541; Devlin on Deeds (2 Ed.), secs. 174, 211; Long v. Wagoner, 47 Mo. 178; Jennings v. Brizeadine, 44 Mo. 335; Brunsmann v. Carroll, 52 Mo. 313; Fosburgh v. Rogers, 114 Mo. 134; Peter v. Byrne, 175 Mo. 233; Hunter v. Patterson, 144 Mo. 310; Roberts v. McIntire, 84 Me. 362; Anglade v. St. Avit, 67 Mo. 435. (2) In ejectment where both parties claim through a common source of title, it is unnecessary to go back of that title. It is sufficient for the planitiff to deraign his title from the common sources. Holland v. Adair, 55 Mo. 40; Butcher v. Rogers, 60 Mo. 138; Miller v. Hardin, 64 Mo. 545; Smith v. Lindsey, 89 Mo. 76; Grandy v. Casey, 93 Mo. 595; Huff v. Morton, 94 Mo. 405; Holland v. Adair, 55 Mo. 40; Bank v. Harrison, 39 Mo. 433; Cummins v. Powell, 97 Mo. 524; Choquette v. Barada, 33 Mo. 249. A necessary corrollary of the rule under consideration is that where there is a common source of title agreed to, assumed, or shown to exist and relied on, then irregularities in conveyances prior to the common source, become weaknesses common to both litigants and hence immaterial. Ebersole v. Rankin, 102 Mo. 498; Machine Works v. Bowers, 200 Mo. 234; Sloan v. Chitwood, 217 Mo. 465. (3) The first contention of a lack of jurisdiction defeating the deed from the sheriff to Jamison is answered by the verdict of the jury declaring the return to have been regular. A sheriff's deed set out fully certain judgments, and also set out

certain executions, but failed to couple the executions with the judgments, but the names of the parties, and the amounts as set out were identical. Held that it was inferable that the executions were on these judgments and that such omissions are not fatal to the deed, inasmuch as they could mislead no one. Wack v. Stevenson, 54 Mo. 481; Gaines v. Fender, 82 Mo. 507. (4) The substance of appellant's next contention is that, the finding of facts being against the respondents and the judgment for respondents in the first trial of this case, the finding of facts is conclusive on respondents. This is not the law. Where the judgment is wholly in respondent's favor he is not concluded by any finding of facts made by the trial court to which he did not except. Egger v. Egger, 225 Mo. 118; Patterson v. Patterson, 200 Mo. 335. (5) Appellant's next contention is "lack of jurisdiction may be shown by secondary evidence of the contents of the lost files for the purpose of impeaching a judgment." An inspection of the instructions given by the trial court will show this court that this case was tried upon the above theory. The only question pertinent to this matter, was a question of fact, was the question as to whether the testimony of an interested witness, a defendant in an ejectment suit testifying as to the contents of a lost return of service, which he last saw in 1866 or 1867, and which he did not act on for more than thirty years, was of sufficient probative force to destroy the validity of a judgment of a court of record, rendered in 1863, when that witness's own testimony showed that his memory was at fault as to every thing else occurring about that time. (6) A "former public administrator had authority to execute deeds." Sec. 309, R. S. 1879; Bray v. Adams, 114 Mo. 486. (7) The judgment can be aided by reference to other parts of the same record. Dixon v. Hunter, 204 Mo. 383. Where the record before the appellate court

shows that certain persons were made parties plain-
tiff and that judgment was in favor of plaintiffs, the
court will correct any informality in the omission of
their names from the caption or body of the judgment,
Walker v. Railroad, 193 Mo. 475; Morrison v. Turn-
baugh, 192 Mo. 446; Dixon v. Hunter, 204 Mo. 383.
A mere informality in drafting a verdict or entering
a judgment which works no prejudice to the complain-
ing party will not be ground for reversal. Holmes v.
Braidwood, 82 Mo. 610; Hornblower v. Crandall, 78
Mo. 581; Hanley v. Holton, 120 Mo. App. 402.

LAMM, J.—Ejectment. The squabble is over a
triangular piece of somewhat uneven land of, say, ten
acres, lying for many years (if not now) mostly in a
state of nature in the outskirts of Springfield. In
1897 defendant took possession. In 1904 plaintiff, H.
E. Howell and his then co-plaintiff, William G. How-
ell, sued defendant and his then tenant, Steve Blakey,
for possession. In 1905, at a trial to the court without
a jury, the then plaintiffs had judgment. In 1908
that judgment was reversed on appeal here and the
cause remanded generally. [213 Mo. 565.] Subse-
quently Blakey and William G. Howell died. Prior
to Howell's death, he parted with his interest (an un-
divided half) and plaintiffs, the Pattersons and Ed-
monson, acquired it. By due and timely orders of court
they were substituted instead of W. G. Howell deceased
and now litigate as co-plaintiffs with H. E. Howell.
Thereat an amended petition and answer were filed.
In 1909 plaintiffs on those amended pleadings again
had judgment, this time on a trial to a jury. By the
inadvertent misprision of the clerk the style of the
case on the record seems to run on as it did at the
start.

The record is long; the facts, tangled; the excep-
tions, many. Now and then *"In medias res"* is a use-

ful motto.  Taking heed thereof, it is as well to go at once into the midst of things and let sufficient of the pertinent facts come out in due course with points ruled.  We shall formulate material propositions *pro* and *con* in our own way.

I.  Of a common source of title (and herein of objections to two deeds in the chain of title prior to the common source).

Among the contentions of defendant is one invoking the doctrine that plaintiffs must recover in a strict action at law like ejectment, if at all, on the strength of their own and not on the weakness of defendant's title.  It is asserted and maintained that there is an outstanding legal title; *contra*, respondents assert and maintain that there is a common source of title, and that the defects, if any, in conveyances after the Government parted with title down to this common source are immaterial.  The question arises in this way:

William Fulbright entered the land as part of a greater tract in 1837.  Dying, in 1845 his estate was partitioned in kind by judicial proceedings, and, by a commissioners' report duly confirmed, the land in dispute as part of a greater tract was allotted to a son, William D.  In 1853 William D. Fulbright executed an instrument duly spread of record purporting to convey to D. L. Fulbright.  That instrument recites the receipt of $1600 in full payment of said greater tract, describes the land, makes convenants of warranty, is under seal and duly acknowledged. But it is inartificially drawn and is said to lack apt words operative to convey a legal estate in the land, whatever estate was conveyed in equity. In 1859 D. L. Fulbright conveyed the parcel in dispute to Charles Carleton.  This Carleton, it is claimed, is the common source of title.  The description in his deed is by courses, variations of the

compass and distances. The second course, as shown by appellant's abstract, is: "North 41½″, east 88 poles." It will be observed that the sign after the figures, 41½, is *seconds*. Respondents furnish a counter abstract showing that sign to be *degrees,* thus "°." The original deed is lost and a certified copy was used below. ˙ There was counter contentions not only as to the effect of this instrument but as to what this certified deed actually showed the sign to be. The certified copy itself is not brought here. If the sign be degrees then the whole tract in controversy is described. If seconds, only a small part of it is described. Counsel for plaintiffs insist their clients should not lose their land on the slender and uncertain fact that two very short curved lines do not precisely unite at top and bottom and make a little circle, the mathematical sign for degrees, especially as the sign for degrees runs through all deeds in both chains of title indicating that those who were called on to interpret the sign construed it to be that for degrees. But if Carleton is the common source of title such questions are out of the case and laid on the shelf. If he is not, they are alive and of substance enough to be reckoned with.

We hold Carleton is the common source of title. This, because:

(a) Attending to the record, in defendant's answer we find among other allegations the following: " . . . that this defendant derived his title from Carleton, a common source of title, through proceedings to foreclose a vendor's lien. . . . " In defendant's principal brief we find the following: "It will thus be perceived that both parties claim title under Charles Carleton." To the foregoing we add that plaintiffs claim title through a judgment against Charles Carleton in the Greene Circuit Court in 1863, an execution thereon, a sale thereunder in 1864, a sheriff's deed fol-

lowing mesne conveyances. Defendant claims title under two junior judgments against Carleton, by execution sales and two sheriff's deeds and mesne conveyances. So, below, a common source of title was a trial theory on both sides. It thus appears not only that Charles Carleton was the common source of title by admission and by assumption but he was shown to be such by the proof. So prominently does a common source of title run through the history of this case from "a" to "izzard" that when here before, in set terms, on less proof (for at the first trial the answer did not contain the admission quoted) this court assumed a common source of title, thus: "Charles Carleton was the common source of title." [*Vide,* 213 Mo. l. c. 569.]

(b). Attending to the law applicable to such a record, the accepted rule is that where there is an agreement on the common source of title or both parties admit or assume a common source or the evidence shows one, then (subject to exceptions not within the facts of this case) the doctrine that a plaintiff must recover in ejectment on the strength of his own title from the Government down is departed from and he need not go back of the common source in making his case. In such event irregularities in conveyances anterior to the common source become immaterial, because they are common to both litigants and affect the common stem of the title only. They are like equal factors affecting an equation similarly. They offset each other and may be canceled out in solving the problem. Hence to show a better outstanding title will not help defendant in ejectment when facts exist such as herein dealt with; for the question is no longer: Has plaintiff a good legal title against the whole world?—it is rather: Has he a better title than defendant beginning with the common source and coming down to the time of the suit? After all the last

question hits the bird in the eye or the nail on the head. When you ask it you touch the merits as with the point of a needle (*Rem acu tetigisti*, as put by old Plautus). [Harrison Machine Works v. Bowers, 200 Mo. l. c. 234-5, and cases cited; Sell v. McAnaw, 138 Mo. l. c. 272; Feller v. Lee, 225 Mo. l. c. 328; Grandy v. Casey, 93 Mo. l. c. 605; Newell on Ejectment, 578 *et seq.*]

The mere adventitious circumstance that respondents through inadvertence or out of abundant caution (which latter is said by the precept to injure no man) read into the record a chain of title prior to the common source, as they did, did no harm or good to defendant. As between the litigants it does not a whit affect the merits of the right to possession. Its only office is to encumber and litter up the record. It ought not to abrogate the general rule announced or suspend its application—a rule by some authorities predicated of *estoppel* and by others predicated of *convenience* in trying land titles—but however bottomed, is a good rule of law of everyday use.

It is on the premise that under applicable law we have nothing to do with them, that we rule points made by defendant on the Fulbright and Carleton conveyances against him, and start with a common source of title, Carleton.

II. Of the judgment against Carleton, the execution thereon and the sheriff's deed following a sale thereunder on which plaintiffs claim title.

Broadly, the positions of defendant are: (1) The judgment is void, hence is open to collateral attack. (2) If the judgment be good, yet the execution is bad under which the sale was made. (3) If judgment and execution be both good, yet the sheriff's deed on which plaintiff's title rests is bad. Looking to those propositions in their order, we observe:

(a)   The principal vice in the judgment is said to be that there was an abortive attempt to garnishee Carleton as debtor of one Taylor, who, in turn, was judgment debtor of a firm, Hayden and Wilson. That the court acquired no jurisdiction over Carleton because the return of the sheriff was fatally defective.

Briefly, the record shows as follows: In January, 1861, Hayden and Wilson recovered judgment against Taylor in the Greene Circuit Court on two notes in the sum of $922.81.   Execution issued, as shown by the execution docket, on February 14, 1861.   This execution (with many other papers in the old files of that court) is lost.   The last seen of it was in 1866.   It was on this lost execution that Carleton was summoned as garnishee of Taylor, and the return of the sheriff showing such service of summons, indorsed on that execution, is also lost.   The old files of the case and court records show interrogatories exhibited against Carleton at the August term, 1862, of said court.   All cases were continued from January to the June term, 1861.   In fact there was no circuit court in Greene from February, 1861, until the first Monday in August, 1862.   We take judicial cognizance of the historical fact that the Civil War raged with fury in that section during such lapse in the courts—a lapse doubtless due to war.   This lapse in the terms of court merely had the effect of adjournments.   [R. S. 1855, p. 539, secs. 44 to 48.]   If Carleton was in court he stayed in till final judgment unless put out by some order of court.   At the August term, as said, interrogatories were filed, to be answered by Carleton.   Presently an interlocutory judgment was rendered against him on default and the cause was continued until the next term to make inquiry of the amount due by him to the judgment debtor.   That judgment recites (among other things): "And it appearing that the said gar-

242 Sup.—34

nishee, Charles Carleton, had been duly summoned as garnishee and has failed to answer interrogatories," etc. At the next January term, 1863, on February 10, final judgment went, reciting, *inter alia,* thus: "And it appearing to the satisfaction of the court that Charles Carleton has been duly summoned as garnishee in this cause," etc. Further, that the court sitting as a jury found that Carleton was indebted to Taylor in the sum of $682, and judgment followed in favor of Hayden and Wilson for that sum against Carleton garnishee, with award of execution.

On the main contention, to-wit, the sufficiency of the return, plaintiffs rest on the recitals of those two judgments and such record entries and file papers as have been preserved. "The stern Sergeant, Death, is strict in his arrest." In this case he seems to have taken into custody on his dread capiases and mittimuses and carried off all witnesses who saw that return, save one, defendant. As against said recitals defendant took the stand on his own behalf and testified that in 1866 he had occasion to examine the return of the sheriff on the original execution against Taylor; that he remembered its language; that it ran (barring two or three words he could not recall), thus: "Executed the within writ by summoning Charles Carleton as garnishee;" that it was signed by Reed or Matlock as sheriff, witness could not tell which. He further testified, in substance, that he had not seen the return from that time to the trial and that the matter was wholly out of his mind for thirty years until recalled to mind in 1897 by one Mead who told or wrote him, he, defendant, had title. On that *renaissance,* presently in that year he took possession of the property in dispute through a tenant and thence forth claimed title under sheriff's deeds on junior execution sales against Carleton—one on a judgment in 1867 and another on a judgment in May, 1863.

There is evidence the scope and tendency of which was to somewhat fortify defendant's recollection on one side and somewhat impair it on the other, which we need not revert to in detail. Much of pith is made of it in rather brisk and spicey argument, showing color of feeling on both sides, but it is as well to let it pass by as more appropriate to a jury than to an appellate court on questions of law. The recitals of the two judgments as over against the efficacy of defendant's awakened memory made the issue on the character of the sheriff's return a question of fact and on which the jury, passing unfavorably to defendant, found against him. It may be conceded that if defendant's recollection of the words of that return is to be conclusively taken as true, as a matter of law, then the judgment against Carleton as garnishee was void. This because the return as reconstructed was fatally deficient. It attached nothing in Carleton's hands. It cites him to appear in no court or at no day or term certain to answer interrogatories. It is not necessary to enter upon an exposition of the learning in that behalf. The curious may consult statutes and authorities cited in Howell v. Sherwood, 213 Mo. l. c. 575-6.

We do not gather that learned counsel for plaintiffs contend for the proposition that, on a return shown lost, as here, oral testimony by witnesses who had seen it might not come in to reestablish its terms. Neither do we gather that learned counsel for defendant stand for the proposition that the triers of fact are bound, whether or no, to take as infallible the recollection of a witness testifying nearly forty years after the event to the contents of a written instrument.

Whether the return was as indicated by the judgments, or as recollected by the witness, we hold, as said, was at most a question of fact. Plainly the testimony of the witness tending to impeach the verity of the recitals of the record could have no office other than to raise an issue of fact for the triers of fact and

not a question of law for the court. [Miller v. Railroad, 157 Mo. App. 638, 144 S. W. 134.] And this remains true notwithstanding defendant was able graphically (and reasonably) to explain the grounds of his recollection, the reason the matter was out of his mind for thirty years, the cause of his sudden assertion of a forgotten (or hitherto unknown) title after that long lapse of time, and to fortify his testimony by corroborative *data*. On the other hand, as to be expected, his testimony showed that he was not quite free from all trace of that frailty of memory in recalling ancient matters that is the unfortunate but common inheritance of every one of us. So, too, there is in the case on behalf of plaintiffs, and to be reckoned with, the trite presumption that a court of general jurisdiction proceeds by right and not by wrong, the fact that the recitals of the record of due service on the garnishee are presumptively true in the first instance and the strong presumption that officers properly perform their official duties. Moreover, some stress is due to the fact that the circuit court at the time of the Carleton judgment passed on its own jurisdiction in the light of a fact then before it, to-wit, the physical presence of the real return. [State ex rel. v. Mills, 231 Mo. 493.] Again where there is a great lapse of time and files are lost, as here, courts will indulge very favorable presumptions to uphold judicial sales. [Agan v. Shannon, 103 Mo. l. c. 668; Chilton v. Metcalf, 234 Mo. l. c. 53.]

The jury took defendant's testimony along with all the other facts and brought in an adverse verdict. On appeal that verdict must stand unless there is something else in the case; for, as already pointed out, the case is drawn within the lines of the cardinal maxim: *Ad questionem juris respondent judices; ad questionem facti respondent juratores.*

His counsel argue there are several other things in the case—one especially standing as an insurmount-

able obstacle in the way of the verdict, to-wit, *res adjudicata*. To the latter view of it we will recur presently under another head.

(b)   Of the execution on the Carleton judgment. Defendant presents an aggregation of objections against this execution. We fail to find any objection made or exception saved in the record. The statute forbids the consideration of exceptions not ruled below. [R. S. 1909, Sec. 2081.] But if in error in our estimate of the record, there is no substance in the points.

(1)   It is argued that the execution bears date December 7, 1863, and is made returnable at a day in the *past,* to-wit, to a term of court commencing and to be holden at the court house in Springfield "on the 4th Monday in January *next* (A. D. 1863)." It is obvious that the word "next" controls the figures "1863 and makes that impossible date read "1864." The neutralizing antidote is in the selfsame spoon with the poison of the clerical slip.

(2)   It is argued that the execution was an *alias* execution and was void because it did not recite former executions and levies. The point, exceedingly subtle and nice, amounts in effect to a contention that the *alias* execution was a *venditioni exponas,* a writ sometimes issued to cause a sale of lands seized under a former writ to be made. [Bl. Law Dict.] The statute relied upon by defendant is found in the Laws of 1862-3, p. 20. It is unhandsomely worded, but was evidently a war measure intended to preserve the force of former levies of executions which for some reason had not been executed. That is the construction put upon it by this court in construing its sections, separately, as well as the whole thread and trend of the enactment. [Turner v. Keller, 38 Mo. l. c. 336; Stewart v. Severance, 43 Mo. l. c. 332; McDonald v. Gronefeld, 45 Mo. 28.] Now, the first execution issued against Carleton was fully executed upon all property

levied upon and the *alias* in no fair sense came within the purview of the act mentioned. It did not have to recite former levies. There was a clerk's certificate indorsed thereon showing the writ to be an *alias*, the amount collected theretofore and the amount due.

(3) Whether the judgment against Carleton carried costs or not, it did carry interest under then existing statutes. Computing interest, the judgment was not fully satisfied by the levy and sale under the first execution, and points made in that behalf by defendant against the execution are disallowed with the others.

(c) Of the sheriff's deed on the execution sale under the Carleton judgment.

It is not contended that the sheriff's deed does not make all prescribed statutory recitals. It is rich and accurate in recitals. Having described the judgment, the execution, the levy on the land in dispute (describing it), the advertisement, the place, viz., at the courthouse door, the time, viz., February 2, between 9 a. m. and 5 p. m. during the session of the circuit court at its January term, 1864, it goes on to say that the sheriff did (quoting): ''Expose for sale at public auction for ready money, all the right, title, interest and estate of the said Charles Carleton of, in and to above described real estate, and George W. Jameson being the highest and last bidder for said real estate, at the price and sum of sixty dollars, the same was stricken off and sold to the said George W. Jameson for that sum.

''Now, Therefore, in consideration of the premises, and of the said sum of sixty dollars to me said sheriff in hand paid by the said George W. Jameson, the receipt whereof I do hereby acknowledge, and by virtue of the authority in me vested by law, I, Thomas A. Reed, sheriff as aforesaid, do hereby assign, transfer and convey to the said George W. Jameson, his

heirs and assigns, forever, with all rights and appurtenances thereunto belonging.

"In Testimony Whereof, I, Thomas A. Reed, sheriff of the county of Greene, have hereunto set my hand and affixed my official seal this 2d day of February, A. D. 1864.

"Thomas A. Reed, Sheriff,   (Seal.)"

The vice in the deed is said to be that there are no words operative to convey the land.

In some jurisdictions a sheriff's deed is not necessary to transfer land sold under sheriff's hammer on execution levy, and knocked down to a bidder. Title went to such purchaser by operation of law. [17 Cyc. 1340.] But in Missouri a deed is essential. [Dunnica v. Coy, 24 Mo. 167; R. S. 1909, sec. 2231.] The language of that statute is mandatory. If such deed be so defective as only to convey an equitable one, a plaintiff, who in ejectment is strictly at law and not in equity, can not recover on such equitable title. [Ables v. Webb, 186 Mo. 1. c. 247.] His remedy in such predicament is to get a corrected deed in the statutory way. [Dixon v. Hunter, 204 Mo. 387 *et seq.*] While a sheriff's deed is not entitled by inference to as liberal a presumption of intendment as is a direct conveyance by a grantor, yet it is entitled to the effect that its face imports. [Nelson v. Brodhack, 44 Mo. 1. c. 603; DePaige v. Douglas, 234 Mo. 78.] Every human document must be interpreted in a forum of reason in the light of common sense—which latter, after all, is the sum and quintessence of reason. An execution is defined by Coke to be the very "end and fruit of the laws." *Executio est finis et fructus legis.* [Co. Litt. 289b.] A sale and a conveyance to follow are but a main part and parcel of that end and fruit. He sues in vain who can not have execution together with all appurtenant incidents. Accordingly courts look fa-

vorably on judicial sales. They do not approach a sheriff's deed with any sour predisposition to make its parts perish if possible by overnice construction. *Contra,* they get at its true intendment by its four corners precisely as they do in other deeds. [Robinson v. Levy, 217 Mo l. c. 520.] The whole instrument must be construed together to get the intendment. Agreeably thereto we might cite many examples from the books if there were a call to do so. In old learning deeds were divided into artificial and technical parts —a formidable and bristling array, witness: the "premises," the "habendum," the "tenendum," the "reddendum," the "conditions," the "warranty," the "covenants" and the "conclusion." One provision was not allowed to impinge on another. The language expressive of the intention must appear at the right place and in the right clause and order. But old things, passing away, have been consigned to a judicial scrap-pile, and all things have become new in that regard. "The modern rule, which prevails in this State, is much simpler and much more calculated to carry out the wishes of the grantor. The intention of the grantor, as gathered from the four corners of the instrument, is now the pole star of construction. That intention may be expressed anywhere in the instrument, and in any words, the simpler and plainer the better, that will impart it, and the court will enforce it no matter in what part of the instrument it is found." [Per MARSHALL, J., in Utter v. Sidman, 170 Mo. l. c. 294.] We see no reason why a sheriff's deed may not somewhat profit and prosper by that rule so long as it complies with the cited statute.

Quickened by such precepts we conclude that although the deed has a syntactical blemish, yet, taken as a whole, it is well enough. This because:

It is argued that under the wording of the deed it is not clear that the land in dispute was conveyed. That argument travels in this way (borrowing from

one of defendant's briefs): "Here, however, the deed does not undertake to convey any particular interest in any designated real estate, unless the presumption is indulged that the sheriff did not levy upon any other property of the execution defendant than that recited in the premises and the further presumption that, if he did, Jameson did not become the purchaser of it, thus founding one presumption upon another in violation of settled precedents."

But that argument, when brought to book, we think fallacious. It is not a question of presumption at all. The return of the sheriff on the execution shows a levy upon, a seizure and sale of no land but that in dispute. Agreeably thereto is the advertisement. So, the recitals of the sheriff's deed describes only the land in dispute and proceeds to say that Carleton's right, estate, title and interest in that very land was stricken off and "sold" to Jameson. Therefore, we see no ambiguity in subject-matter. Finally the transitive verbs "assign, transfer and convey" are used, followed by the phrase, "to the said George W. Jameson, etc." If between the latter phrase and those transitive verbs there had appeared the word "it," or such phrase as "the premises" or "the same" or "said land" or "the real estate" or "the property" there would be no lapse in syntax. But the omission avails nothing. As the verbs used are transitive verbs they point to and call imperatively for an object. Can there be reasonable doubt about that object? Clearly, no. It was "it," "the same," "the land." Those verbs, assign, convey and transfer, connect themselves irresistibly with the thing sold and mentioned before, viz., the land. A thing necessarily implied is within the intendment of any instrument. The maxim is: The expressing of those things which are implied, operates nothing. (*Expressio eorum quae tacite insunt nihil operatur.*) A school boy, parsing, could not well miss the object called for by

those verbs. Peradventure, now and then, speaking with caution, even a court may know as much as a school boy (on a pinch). Nor do we think the prior phrase, "sold to the said George W. Jameson," is without some little significance when read with what follows and goes before. When the context permits such construction in aid of the intendment of the deed, the word "sold" may be allowed to mean transferred —"a consummated contract of sale." [Forthman v. Deters, 206 Ill. l. c. 166; Web., tit. "Sell."]

It is good and acceptable doctrine that sheriff's deeds (like others) should contain somewhere within their four corners words apt to convey the land. [Rorer on Judicial Sales (2 Ed.), sec. 946.] Here there are apt words and the only possible question is over the identity of the thing conveyed. Under the verbiage of this sheriff's deed there can be, as said, no substantial question about that. If A recites he has "sold" his land, describing it, to B, and hereby assigns, transfers and conveys to B, there can be no doubt on what A conveys or B acquires.

The point is disallowed to defendant.

III. Of a certain administrator's deed.

Having acquired title under the sheriff's deed held valid, supra, Jameson conveyed to Harrison J. Lindenbower in 1868. Lindenbower dying and his estate being in the hands of the public administrator, plaintiff, H. E. Howell, acquired Lindenbower's title in 1883 by a deed from one Julian, paying more than the appraised value. The deed describes Julian as "former public administrator of the county of Greene in the State of Missouri, in charge of the estate of H. J. Lindenbower, deceased." It is signed similarly. Defendant objects to that deed because a *former* public administrator had no authority to execute it. The challenge is without substance. Public administrators, at the time in hand, were not discharged at the

expiration of their official terms from the administration of estates in their hands. They continued such administration until such estate was fully administered, or until discharged in the ordinary course of law as, other administrators. [R. S. 1879, Sec. 309.]

There are other objections now urged to this deed, not made below, while some made below are not urged here. All of them may be said to go to the integrity of its recitals. But there is no record brought here to measure the force and soundness of any of them. A Missouri administrator's deed has been held to be prima facie evidence of the truth of proper recitals therein. [Bray v. Adams, 114 Mo. l. c. 491.] Defendant stands on the face of the deed. We see nothing wrong with it.

IV. It may, at this stage, be well to dispose of a group of minor questions.

(a) In 1894 plaintiff, H. E. Howell, conveyed an undivided one-half interest in the tract to William G. Howell, who was originally, as said, co-plaintiff with H. E. Howell. In 1905 William G. Howell conveyed an undivided one-fourth interest to John A. and Orin Patterson. These grantees are now co-plaintiffs with H. E. Howell and B. S. Edmonson. In 1908 William G. Howell quitclaimed to Edmonson. The deed has many recitals. We will reproduce none of them. Something is said in defendant's statement to the effect that this deed is "a plain contract of maintenance," but the suggestion is not worth while. It does not seem to have been made below, nor to be pursued now in his brief. If decided for him it would not dispose of the merits. We put it aside.

(b) The cause was tried before the Honorable Alfred Page, judge of division two of the circuit court of Greene county. It is argued that the act creating that court was unconstitutional. The act appears in

Laws 1909, p. 413, *et seq.* The point is without substance, because:

In the first place its constitutionality is vouched for under the doctrines of State. ex rel. v. Fort, 210 Mo. 512, and authorities. cited in that case. The case of State v. Hill, 147 Mo. 63, relied on by defendant, is considered in the concurring opinion of Brother WOOD-SON in the Fort case and differentiated. (*q. v.*):

In the next place the challenge to the constitutionality of the act was not timely. The question of the constitutionality of a law must be raised in a case under circumstances commensurate with its dignity. Defendant went to trial without objection to the legality of the court. He took the chance of a successful issue. He made his constitutional point first in his motion in arrest. That was too late under the record here. [Hartzler v. Railroad, 218 Mo. 562; State v. Gamma, 215 Mo. 100.]

(c) There are deeds in the case from Carleton on both sides, but if he lost title, as already held, by the prior sheriff's deed on sale under the Hayden and Wilson judgment we need not consider them.

(d) There are questions as to good faith of purchasers under certain conveyances on both sides. But under the view we take of it the case turns on a cold legal title on the application of cold law. All such questions are *ad hominem* in character—coloring-matter and make-weights. We put them aside.

(e) Defendant complains of the exclusion of a certain letter written by Carleton to him long after Carleton lost title. From any standpoint on any vital issue we can not see how that letter was aught but hearsay.

(f) Defendant offered a few returns made by sheriffs, possibly the same sheriff that made the return on the original Hayden and Wilson execution against Taylor. It seems those returns were slovenly made and deficient in matter. The idea at the bottom

of this offer seems to be to prove a *habit* of making bad returns—possibly under a virgin maxim: False in several other things, false in the one certain thing. But that would be a novel and anxious change in the old maxim, directed to oral testimony: *Falsus in uno, falsus in omnibus*. After all the real issue was whether the return in question was deficient, not whether the officer had made certain other deficient returns by slip or ignorance. In mistakes, each stands, like a tub, on its own bottom. Defendant did not attempt to show the officer could not make a good return, or that all the returns he made were deficient in a given way or in a given particular indicating a settled misconception of one phase of the law. The exclusion of these returns was well enough. They would have only littered up the minds of the jury.

(g)   The trial answer pleads title in defendant under the thirty-year Statute of Limitation and something is said by way of argument on the non-payment of taxes. But it appears that both sides were somewhat derelict in bowing their necks to the yoke of tribute to the State. It appears, further, that H. E. Howell paid taxes while in possession, such as it was, prior to 1897. Hence, the thirty-year statute is out of the case. Howell made deeds, brought suits to quiet title or involving title—all apparently in good faith. So, defendant seems to have acted in good faith and brought the same character of suits and made like deeds when he took possession. If facts of that sort on one side be laid cheek by jowl with facts on the other they look alike. None touch title in ejectment and we put all of them aside.

V. Of *res adjudicata*. Defendant invokes the doctrine of the law of the case, or *res adjudicata*. As said at the outset, when the case was here before it came up from a judgment in a trial to the court sitting as a jury. At that trial defendant submitted a finding of facts and the same was allowed by the judge who there-

upon rendered judgment for plaintiffs on those facts. Among the facts so submitted by defendant and so found by the trial judge were these: "That the testimony of the defendant, Thomas A. Sherwood, given in this cause, is true, and that the facts concerning which he testified are as they were by him stated." Further along the finding was that the challenged return on the execution in Hayden and Wilson v. Taylor ran, in accordance with defendant's testimony, thus: "Executed the within writ by summoning Charles Carleton as garnishee." The case on appeal here rode off strictly on that finding of facts as a premise assumed for our conclusion. [Howell v. Sherwood, 213 Mo. 565.] After discussing that finding in relation to the return, as re-established by defendant's oral testimony, we ruled this way: "*This being true,* the judgment of the circuit court rendered against Carleton in the garnishment proceeding was an absolute nullity. . . . The judgment being void, the execution and sale thereunder were likewise void, and were inoperative to transfer the title of Carleton to Jameson, and to those who claim under him. And since plaintiff deraigns title from Carleton through the sheriff's said deed to Jameson, that constitutes a missing link in their chain of title, which is fatal to their right of recovery in this case. The judgment of the circuit court is, therefore, reversed *and the cause remanded.*"

There was no motion filed here to modify that order.

At the first trial defendant's answer was summed up by us thus (p. 569): ". . . . The answer of defendant Sherwood was a general denial of all the allegations of the petition except the one of possession. . . ." When the case went down, as said at the outset, defendant filed an amended answer setting up new matter in defenses covering three pages of print. Summarizing that new matter, it consists of allegations of fact pertinent to a plea of the thirty-

year Statute of Limitations, and a plea of that statute; and allegations of fact pertinent to a plea of estoppel, followed by such plea. The defense, then, at the second trial stood this way: (1) An admission of possession and a general denial as at the first trial; (2) limitations; (3) estoppel.

At the second trial steps were taken to compel the court to rule our decision on the former appeal was *res adjudicata* on the invalidity of the judgment against Carleton, and that defendant was entitled to a judgment on that ground. The trial court refused to follow that lead and the question is: Was that ruling error? In our opinion, no. This, because:

Defendant's contention, in effect, impeaches our former judgment. On his theory that judgment was wrong. It should have been either that we entered an out-and-out judgment here for defendant, or (what would amount to the same thing, viz.), that the judgment of the circuit court was reversed and the cause remanded with directions to that court to enter judgment for him. It should not have been, as it emphatically was, a judgment of reversal with a remanding of the cause without directions—a well known formula used by this court ever since its existence, in sending a case down for a new trial. [Donnell v. Wright, 199 Mo. l. c. 315.] Again, if thought erroneous, why was not a timely motion made here for a modification during the term, while we held it in our breast and could heal any wound it was thought we had by slip given the law? [*Ibid.*, l. c. 317-18.] Moreover, if defendant thought to rely on *res adjudicata* to force a judgment below, why were the issues changed in the amended answer after the case went down? What was that for except preparatory for a new trial?

The maxim is: It is to the interest of the State that there be a limit to litigation. Agreeably to that maxim we have a statute giving us a broad and flexible discretion in the disposition of causes on appeal,

reading in part that we ''shall examine the record and award a new trial, reverse or affirm the judgment or the decision of the circuit court, or give such judgment as such court ought to have given, as to them (appellate courts) shall seem agreeable to law. . . .'' Under that statute, reading our judgment in the light of what we could have done, *but did not do,* what could our judgment reversing and remanding the cause, without more, mean except that we refused to give judgment here for defendant and, what is more, refused to direct the trial court to give such judgment, but opened the case generally?

Are we at liberty, speaking at this distance on our judgment, to say what our thoughts were when we rendered it? Are not past inarticulate thoughts valueless on a concrete case on new appeal? The question is what we *did,* not what we *thought.* What we did was to send that case down for a new trial, minus directions and with a free rein. When we did that we could not have meant, in right reason, that our former decision was an adjudication that the oral testimony of a witness was true. Mark, the whole case turns on that fact. The verity of oral testimony is for the triers of fact in the box and not for the judge on the bench, except he sit as a jury at the time.

There is a vast deal of exposition on the law of the case, whereby the under as well as the upper court may be bound, subject to exceptions. For instance, taking only one example, if we had passed judgment construing a written instrument, like a deed, a contract, writ, ordinance, judgment, or law, then our exposition of its effect would have bound the court on a new trial when the instrument is again up for consideration, in the same case, but we know of no precedent for binding a lower court on a fair issue of fact (like the terms of a lost return) in a law case to our view of the *weight* of oral testimony on the point, when we have awarded a new trial. We might say there

Howell v. Sherwood.

was no evidence at all sustaining a plaintiff's case as presented to us, but that is essentially a different matter. Observe, we did not say that when the case was here before and could not well have said it in the face of the recitals of the judgment in the garnishment case and the presumptions plaintiffs were entitled to. If the case be opened generally, as here, would the verdict of a former jury bind the second jury? By the same token would the finding of the former trial judge on a mere question of fact bind the second trial judge. We are cited to no case, and know of none, where we have ever said so, and we shall make no precedent of the sort.

We stand by our former opinion precisely as written. We say there that the garnishment judgment was a nullity and that the sheriff's deed based thereon was a nullity. Wherefore? The answer is, what we said in that behalf is to be taken with the whole thread and trend of the decision. The court below found the oral evidence re-establishing the return true and yet rendered a judgment the other way. We said "this being true" the garnishment judgment was void and the judgment, here on appeal, on that theory, was wrong. So it was if the court's finding was true. Now, what he found was based on his estimate, sitting as a jury, of the oral testimony. Hence what we said amounted to an hypothesis, and not to an adjudication on the oral testimony itself. So, though we could have closed the case at once under the cited statute and rendered judgment, yet when we did not do so but remanded for a new trial, that action of ours put the estimate of the former judge on the weight of the testimony in the air, and the whole question of fact was opened for re-examination. When that was opened the validity of the garnishment judgment, hinging on it, was necessarily opened anew under the logic of our former decision.

242 Sup.—35

VI. Finally it is argued that the judgment now here is erroneous on its face. The verdict found the issues for plaintiffs, assessed their damages at seventy-five dollars, and the monthly rental value at one dollar per month until possession is given. The main issue so found for plaintiffs was the right to possession of the specific real estate described in the petition. We see nothing wrong with the verdict. Under it the judgment should have been for the recovery of the premises, describing them as in the petition, the damages assessed and the rents at the rate found by the jury with an award of a writ of possession and execution. [R. S. 1909, sec. 2397.] Instead of reading that way it proceeds, after certain preliminary narrations, including the verdict, as follows: "It is therefore considered, adjudged and ordered by the court that plaintiffs have and recover of and from the defendants the sum of seventy-five dollars as debt and . damages, and one dollar per month until possession is given aforesaid assessed by the jury, together with all costs in this case laid out and expended for which execution may issue."

It will thus be perceived there was no judgment for the recovery of the premises, describing them as in the petition, and no award of a writ of possession. [R. S. 1909, sec. 2398.] We can make nothing of it but that the judgment was not responsive to the pleadings and the verdict. [Elliott v. Delaney, 217 Mo. 14; Springfield Engine & Thresher Co. v. Donovan, 147 Mo. l. c. 633.] In Franklin v. Haynes, 139 Mo. 311, both the judgment and verdict were deficient in a description which would afford a guide to the officer in executing the judgment. That case does not hold that under all circumstances a verdict shall describe the land. In Brummell v. Harris, 148 Mo. 430, and Benne v. Miller, 149 Mo. 228, there are remarks, based on obscurity in pleadings and instructions and arising from the evidence over boundary lines, that criticize

the absence of a description of the land in the verdict. What was said in those cases must be taken with facts showing obscurity in the extent and description of the land in dispute. Not so in the case at bar. Here was a single sharp issue over the right to possession of a tract of land accurately described in the petition. If plaintiffs were entitled to recover at all they were entitled to recover that precise tract of land when that issue was found for them by the jury. We think that verdict a sufficient warrant for a judgment for possession of that land and an award of a writ of possession. It complied with the statute. A judgment is but the logical sequence of the facts found. It is "the sentence of the law upon the record."

Something is made of the fact that the judgment entry carried the title of the cause as it was originally, and not in accord with the order of court substituting parties. That was a mere informality to be corrected as of course under the plenary and saving grace of section 1851, Revised Statutes 1909. By another section 2119, held to be uncommonly broad, to-wit, "as broad as eternity" (Weil v. Simmons, 66 Mo. l. c. 619), we are forbidden to set aside a judgment for any mistake in the name of any party or person where the correct name has been once rightly alleged in any of the pleadings or proceedings. We would make that correction here under the authorities cited by respondents if that would end the case. But for the error at the foot of the verdict in the judgment, omitting any description of the land and not adjudging possession to plaintiffs and awarding a writ of possession, we will reverse the judgment and remand the cause with directions to the court below to amend in those particulars, as well as in the names, on the application of plaintiffs, and enter a proper one *nunc pro tunc* on the verdict.

Under section 2120, Revised Statutes 1909, reading: "The omissions, imperfections, defects and va-

riances in the preceding section enumerated, and all others of a like nature, not being against the right and justice of the matter of the suit, and not altering the issues between the parties on the trial, shall be supplied and amended by the court where the judgment shall be given, or by the court into which such judgment shall be removed by writ of error or by appeal," we could amend the judgment here in those particulars; for the amendment would not be "against the right and justice of the matter" and would not have the effect of "altering the issues between the parties on the trial." But it is better practice to keep the records of lower.courts perfect, in showing final judgments, and that executions and writs of possession should issue from that court and not from this.

The case has been presented with vigor and learning in briefs of wide range, heard thrice here and much has been written on it from time to time. It is meet it should end. *Interest reipublicae ut sit finis litium.*

Perceiving no other error than that pointed out, we reverse the judgment and remand the cause with directions to amend the judgment on the verdict, and enter it *nunc pro tunc,* as indicated above. It is so ordered. *Ferriss, Kennish* and *Brown, JJ.,* concur; *Valliant, C. J.,* does not sit; *Woodson* and *Graves, JJ.,* dissent in separate opinions.

## DISSENTING OPINION.

WOODSON, J.—I adhere to my views of this case as expressed by me in the opinion filed in Division No. 1, which will be attached hereto.

It is not denied by the majority opinion that those views do not state the law of the case, but for reasons best known to the majority, they are brushed aside as so much waste paper, although they express the views of this court as stated in the numerous cases cited therein.

Said opinion is as follows:

This is an action of ejectment, brought in the circuit court of Greene county, for the purpose of recovering possession of a certain tract of land lying and being in the city of Springfield, more particularly described in the pleadings.

This is the second appeal of the case to this court. The first is reported in the 213 Mo. 565. Reference is here made to that report for a statement of the case.

It will there be seen, that Charles Carleton was the common source of title, and that the plaintiffs claim through him, by virtue of various mesne conveyances.

On the former appeal, we held that the sheriff's deed from Carleton to Jameson (one of the links in plaintiff's chain of title) was void, and conveyed no title whatever, for the reason that the court acquired no jurisdiction over Carleton or the subject-matter of the suit, in the case in which the judgment was rendered, upon which the execution was issued, under which the sheriff sold the tract of land to Jameson.

The former holding of this court upon that question was *res adjudicata,* and was not therefore open for further adjudication by the circuit court, on the second trial.

This court has repeatedly held that the rulings of this court upon the first appeal of a cause becomes the law of the case for the government of the lower court upon a second trial, as well as the law of the case upon a second appeal to this court. [Taussig v. Railroad Co., 186 Mo. 281; May v. Crawford, 150 Mo. l. c. 525; Hayward v. Smith, 187 Mo. l. c. 476; Brummell v. Harris, 162 Mo. l. c. 402; Sanford v. Herron, 161 Mo. 176, 186; Gracey v. City of St. Louis, 221 Mo. 1.]

Counsel for appellants do not question the correctness of the rule just announced, but insist that it has a well known exception, namely, that a judgment

in an ejectment suit is not a bar to a second suit of like character. Narrowly speaking, that is true, but as was said by this court in Brummell v. Harris, supra, in ejectment suits, as in all others, "the decision of this court on former appeal was the law of the case upon the trial anew in the circuit court, so far as the facts presented were the same," citing Hennessy v. Brewing Co., 145 Mo. 104; May v. Crawford, supra, and Bealey v. Smith, 158 Mo. l. c. 522.

And this court, in the case of Sanford v. Herron, supra, in discussing the same question used this language:

"This last case correctly defines the effect of a judgment in ejectment. It is *res adjudicata* as to parties thereto and the matter adjudicated upon until set aside or reversed, or its legal effect destroyed by the result of another action of ejectment for the same land by the parties or their heirs who were defendants therein. While it does not prevent a defendant from yielding possession and bringing another action in ejectment to try the title, yet until he does so, he and his privies are bound thereby.

"What, then, was the effect of the judgment of December 13, 1883, upon the possession of J. V. Hilton, asserted through the occupancy of Curry et al., the defendants in that judgment? We answer that, from the date of that judgment and during its life, the said defendants were conclusively estopped from recognizing Hilton as their landlord, or continuing his possession by any act of theirs, in opposition to the rights of Dr. Rose, the plaintiff therein. Unless this is so, it is idle to say that a judgment of a court of competent jurisdiction has any binding force upon the parties thereto.

"While that judgment did not bar an action of ejectment in favor of Oliver, who purchased from Hilton the next day after the judgment, upon no sound principle of law can it be asserted that Oliver's quit-

claim deed transferred to him the possession which had been adjudged to Dr. Rose, nor could the defendants therein whose possession had been adjudged tortious by the court, by a surreptitious payment of rent, put Oliver in possession, as it is well settled that a judgment in ejectment binds not only those against whom it is rendered, but all others who come in under them. Nor is there any legal evidence that they attorned or attempted to attorn to Oliver.

"Within the contemplation of law, whatever rights Oliver may have had to bring his own action of ejectment, from the date of that judgment, Curry et al., the defendants in the ejectment, were estopped from denying they held under Dr. Rose, and their possession, as between him and them, was his possession, and this continued up to the time they attorned to Dr. Rose, which they were authorized by our statute to do. As is said in Prior v. Scott, 87 Mo. 309, 'Where the prior possessor has been turned out by an opposing claimant in judicial proceedings, all presumptions in his favor, growing out of said prior possession, if not terminated, are at least shifted in favor of his successful opponent.'

"It results, then, that upon the admitted state of facts shown by this record, whatever possession those under whom plaintiff claims, held through the defendants in that ejectment, passed to Dr. Rose by his recovery in that case, and it has remained in him and his heirs continuously since the twelfth of December, 1883, the plaintiffs and those under whom he claims have been ousted by an adverse possession for more than ten years and the court erred in not giving defendants' first instruction."

What is meant by the exception before mentioned, namely, that a judgment in an ejectment suit is no bar to another of like character, is that the judgment is no broader than the particular facts adjudicated therein, and that all other matters and things which

were or might have been adjudicated (whether embraced in the pleadings or not), but which were not, may be the subject of further litigation between the same parties.

Ejectment is unlike all other actions in that regard. In all other suits the cause of action cannot be split up, but all matters and things which could have been litigated are settled as effectually as if they had been stated in the petition; and likewise in all such actions, all matters of defense which were or might have been interposed, are also precluded by the judgment rendered. But in ejectment suits, as before stated, the judgment is conclusive only as to the parties thereto and of the particular matters adjudicated therein. [See authorities before cited.]

If that was not the law, and should we affirm the judgment in this case, there would be no law which would prevent the defendant, the appellant here, from bringing another suit based upon the same facts, against the plaintiffs, the respondents here; and should the latter be defeated in that action, then they might turn around and bring another against the former, and so on to the end of time. That is not the law, but the rule is as previously stated, a judgment in ejectment "is *res adjudicata* as to the parties thereto and the matter adjudicated."

Now what were the matters adjudicated upon the former appeal? That question can be best answered by a brief quotation from the opinion delivered upon the former appeal, which is reported in the 213 Mo. 565. At page 574, this court used the following language:

"The finding of facts shows that Charles Carleton was the common source of title, and that the plaintiffs claim through him by virtue of various mesne conveyances.

"On January 30, 1861, a judgment was rendered in the circuit court of Greene county in favor of Peter

Hayden and Pollock Wilson, plaintiffs, against George A. Taylor, defendant for the sum of $922.81 debt, and $64.35 costs.  An execution was issued upon that judgment on February 14, 1861, and said Carleton was served as garnishee thereunder.    On February 10, 1863, a final judgment by default was rendered against the garnishee for the sum of $682.  An execution was issued upon that judgment and levied upon the property in controversy, and on February 2, 1864, it was, by the sheriff, sold to George W. Jameson for the sum of sixty dollars; and the sheriff executed and delivered to him a proper statutory deed.  Defendant assails the validity of that deed, for the reason that the circuit court of Greene county acquired no jurisdiction of the person of Charles Carleton, nor of the subject-matter of the suit involved in said garnishment proceedings.  The basis of this contention is predicated upon the alleged insufficiency of the service of the garnishment upon Carleton.

''The return of the sheriff was made upon the execution issued on the judgment in favor of Hayden and Wilson against Taylor, and was in the following words:    'Executed the within writ by summoning Charles Carleton as garnishee.' ''

The opinion after setting out the statutes governing such proceedings, continues as follows:

''By reading the return of the sheriff, as above quoted, it will be seen that it did not, as found by the trial court and as required by the statute, inform Carleton when and where he was to appear and answer the interrogatories mentioned in the statute; nor did said return contain a recital that the sheriff declared to Carleton that he seized or attached in his hands all debts, moneys and credits due or owing by him to said George A. Taylor, the defendant in the execution.

''Those requirements of the statute are jurisdictional and mandatory, and the omission of the sheriff

to inform Carleton when and where he should appear to answer the interrogatories that might be filed in the garnishment suit; and his omission to declare to Carleton that he attached all moneys, debts and credits due or owing by him to said Taylor, failed to bring him into court or to give the Greene County Circuit Court jurisdiction over him, or over the subject-matter of the suit. That being true, the judgment of the circuit court rendered against Carleton in the garnishment proceedings was an absolute nullity.

"This same question has frequently been before this court, and the uniform ruling has been that such a judgment is void and is subject to collateral attack. [Maulsby v. Farr, 3 Mo. 439; Norvell v. Porter, 62 Mo. 309; Gates v. Tusten, 89 Mo. 13; Feurt v. Caster, 174 Mo. 289; Anderson v. Scott, 2 Mo. 15; Cabeen v. Douglas, 1 Mo. 336.]

"The judgment being void, the execution and sale thereunder were likewise void, and were inoperative to transfer the title of Carleton to Jameson, and to those who claim under him. And since plaintiff deraign title from Carleton through the sheriff's said deed to Jameson, that constitutes a missing link in their chain of title, which is fatal to their right of recovery in this case."

Now upon an inspection of the record presented by this, the second appeal, we find, and in fact counsel for both parties admit, that the evidence introduced at the second trial before the circuit court, and presented in this record, is identically the same, as it was upon the first trial; in fact, a mere transcript of it.

If the contention of counsel for respondents, namely, that the former judgment of this court is not *res adjudicata* of the matters there determined, is sound, then we would have the anomaly of a verdict of a jury found at the second trial not only setting aside and holding for naught the special findings of fact, made by the court at the first trial of the cause

and confirmed by this court upon appeal, but also of abrogating and nullifying the judgment of this court, solemnly entered on record, and that too, when the verdict is based upon precisely the same evidence upon which the special findings of the court were predicated.

If we should affirm this judgment predicated as it is upon the verdict before mentioned, we would thereby give to it greater weight and attach to it more importance than we have given to the special findings of fact, and to the judgment of this court predicated thereon. In other words, the last analysis of the contention of counsel for respondents is, that the verdict of the jury had the effect of setting aside the special finding of fact, and the judgment of this court predicated thereon.

Surely that cannot be the law. Upon the former appeal, we held that the sheriff's deed from Carleton to Jameson was absolutely void and ineffectual to convey title to latter, through which respondents claim title to the land.

If we were right in that holding (and there can be no doubt of it, as there was no evidence to the contrary), then upon the same evidence we must upon this appeal again hold that deed to be void. However much I may disagree from my learned associates in the case of State ex rel. v. Broaddus et al., judges of the Kansas City Court of Appeals, 238 Mo. 189, upon other questions discussed therein, there can be no doubt but what the question of *res adjudicata* is there treated in an able and forceful manner, and is one of the clearest expressions of the law governing that subject that I have been able to find in our reports.

Gracey v. City of St. Louis, supra, is another well considered case. At page 5, LAMM, J., aptly, clearly and strongly stated the rule in the following language:

"Under such circumstances, when the case went down with directions to the trial court to proceed in

Howell v. Sherwood.

accordance with the opinion, and with the suggestion that on the record before us plaintiff was entitled to a peremptory instruction, the trial judge was bound by those directions. He, on the one hand, would have been derelict in duty and subject to criticism, if he had not followed directions, and, on the other hand, ought not to be convicted of error in the same case on the same facts and on the same pleadings, for obeying the upper court. The rule in that regard is soundly bedded in principle and precedent. On a second appeal or writ of error on the same facts and pleadings the appellate court will not notice questions determined in the previous decision. All such are *res adjudicata* and closed. For the practical administration of justice, the former decision is the law of the case. . . .

"There must be an end to a law suit. He sues in vain who can have no final judgment and there would be no end and no final judgment if appeal after appeal were to be allowed in the same case on like facts and pleadings. [See remarks of Mr. Justice GRIER, *arguendo*, in Roberts v. Cooper, 20 How. l. c. 481.]"

It is perfectly clear that the trial court, upon the second trial of this cause, flagrantly violated the ruling of this court as announced in the former opinion, and according to the language of the Gracey case was derelict of duty and is subject to criticism, for so doing.

Look at the situation a moment. What good resulted to the appellant from the first appeal, and our rulings thereon, as viewing in the light of the second trial and the judgment rendered therein? None whatever, for the simple reason that we have precisely the same judgment on the second trial, that was rendered at the first trial and that too is based upon precisely the same evidence as was the first.

Will some one answer that question for me?

Counsel for respondent contend that if this is the law, of which we have no doubt, then it works a great

hardship upon them, for the reason that they had no right to an appeal from the special findings of fact, and judgment of the court rendered at the first trial, the judgment being in their favor.

There is no merit in that contention, for the simple reason that all the evidence introduced at the trial by both parties was brought up on the first appeal, and while counsel for respondents did not, yet they might have insisted, that the evidence introduced was not sufficient to have shown the invalidity of the service of the writ of garnishment upon Carleton, and for that reason the special findings of fact, in that particular were erroneous, and should have been disregarded by this court; and for that reason, we should have affirmed the judgment of the circuit court, notwithstanding that erroneous finding.

But independent of that, the mere fact that the law of the State does not allow an appeal from every order, judgment or decree of a court which may be involved in the complication of litigation, is no reason whatever for the contention that such orders, judgments and decrees are not final and conclusive upon the parties thereto. An appeal is not a matter of right. It is a matter of grace, pure and simple, and when not expressly granted, no such right exists.

They were in as favorable a position to have made that contention as if they had actually appealed the case to this court themselves, instead of the appellant and consequently were not and could not have been injured in the remotest degree by the fact that they had no right of appeal from the first judgment.

The books are full of cases holding that a judgment may be affirmed by this court, notwithstanding error was committed by the trial court, and especially is that true where the error was in favor of the appellant. If counsel believed then as now, that such error was committed by the trial court in its finding of fact, why did they not ask this court to affirm the

judgment notwithstanding such error? The mere fact that they did not see proper to do so does not change the rule of law governing such questions.

But suppose they had made the point, on the former appeal, could there have been the slightest doubt but what we would have sustained the trial court in its finding of fact, just the same as we would have sustained the verdict of the jury where there was substantial evidence supporting it? Certainly not.

That being true, then clearly there is no merit in this contention.

We might with legal sanction have entered the judgment here for appellant on the former appeal, but then as now counsel for respondent contended that, notwithstanding the fact that the sheriff's deed to Jameson was void, still they had other grounds upon which to predicate a cause of action, namely, the statutes of limitations among others, and for that reason we reversed the judgment and remanded the cause for another trial. But instead of relying upon such other cause of action, counsel for respondent preferred to rely upon the same facts which were adjudged against them on the former appeal. That is, they still claim title through the sheriff's void deed to Jameson.

That being true, according to the authorities cited and the ruling of this court upon the former appeal, the respondents failed to make out a case; and for that reason the trial court erred in refusing appellants instruction in the nature of a demurrer to respondents' evidence.

I am, therefore, of the opinion that the judgment should be reversed and the cause remanded to the circuit court, with directions to enter judgment for the appellant.

## DISSENTING OPINION.

GRAVES, J.—I cannot concur in the views of my brother LAMM in this case, for at least two rea-

sons. Firing from behind the bulwark of a common source of title, the opinion permits plaintiff to recover. But for the alleged common source of title a most serious barrier precludes the plaintiffs in their progress to divest defendant of his land. Can plaintiff rely upon the common source of title? The action is one of plain ejectment. The petition is in ordinary form. The answer is (1) a general denial, (2) a plea of the thirty-year Statute of Limitations, and (3) a plea of estoppel. There was no admitted common source of title. The answer is not susceptible of this construction. No such admission was made upon the trial, and the claim of such fact is an afterthought injected for the first time in this court.

I. In the court *nisi* the plaintiff had no idea of proceeding upon the theory of a common source of title. They undertook to deraign title from the General Government, and it is only when confronted here with a break in their alleged title, that they undertake to hide behind a common source of title. Plaintiff could not proceed below upon the theory of a common source of title, because of the thirty-year Statute of Limitations pleaded by defendant. Under such a plea the defendant was pleading an affirmative defense which put the plaintiff not only upon their proof of a paper title in the first instance, but which might force them to proof in rebuttal of the proof offered by defendant under the affirmative plea. By the very pleadings, therefore, plaintiff was forced to undertake to show clear paper title and they made such an attempt, but in my view failed. Even though they were not thus forced to proceed by reason of the pleading, yet they did so proceed. They adopted that theory below, and are bound by that theory in this court. It is useless for us to cite authorities to the effect that parties will be held to the theories of the case adopted by them in the trial court. We have never before de-

parted from that rule, but the present opinion is a departure in my judgment. That plaintiffs did not try this case below upon the theory of a common source of title is too plain to bear argument. If they had such a theory and were trying it upon that theory, no reason can be assigned for filling up the record with all conveyances from the government down to their own muniments of title. This action the opinion of my brother does not satisfactorily explain. It can't be explained. The fact is that the question of a common source of title is one injected in the case here for the first time. In such case we have with unbroken precedent held that the parties will be held here to the theory adopted in the court below. We therefore say that a common source of title is erroneously assumed in the opinion by my brother, and by such assumption he takes the property of one and gives it to another, because of a question we discuss next.

II. In making out their chain of title, the plaintiffs undertook to show that one William D. Fulbright had conveyed the property in dispute to David L. Fulbright. This was a necessary link in plaintiff's title, deraigning it, as they were, from the General Government. Plaintiffs showed that the land in question had been patented to one William Fulbright in 1837. They also showed that, by partition of the lands belonging to William Fulbright after his decease, this particular tract of land was set apart by the commissioners to William D. Fulbright as his share of his father's estate. To show a conveyance of the *legal title* from William D. Fulbright to David L. Fulbright, plaintiff offered an instrument in writing in the following language, description of property omitted for the sake of brevity:

"Know all men by these present, That I, William D. Fulbright of the county of Greene and State of

Missouri, for and in consideration of the sum of sixteen hundred dollars rec'd to my full satisfaction of David L. Fulbright of the county and State aforesaid, the receipt whereof is hereby acknowledged to be in full payment for the following described tract or parcel of land lying and being in the county of Greene and State aforesaid, and bounded as follows, to-wit: . . . To have and to hold the aforesaid premises to him the said D. L. Fulbright, and I, W. D. Fulbright, do covenant to and with the said D. L. Fulbright, his heirs and assigns, to warrant and defend the aforesaid premises to him the said D. L. Fulbright, his heirs and assigns forever."

To the introduction of this instrument as a conveyance of the legal title, the defendant thus objects:

"Defendant objects to the introduction of this deed for the reason that it is no deed at all, and contains no operative words of conveyance, and the instrument is not sufficient to pass any title.

"By the Court: I will overrule the objection at the present:

"To which ruling defendant then and there duly excepted at the time."

Unless this instrument operated to convey the *legal title* the plaintiffs have failed in their chain of title. That such instrument might operate to convey an equitable title cannot avail plaintiffs in this their action in ejectment. If this instrument fails to convey a *legal title,* it upon its face, when taken with the evidence which precedes it, shows an outstanding legal title as against the plaintiffs, and this would preclude their recovery in the case at bar. We are of opinion that this instrument fails to convey a legal title. If so, the plaintiffs have made no case and the judgment here should be reversed, and the cause remanded with directions to enter judgment for the defendant.

242 Sup.—36

This instrument contains absolutely no words of conveyance. It does not purport to "grant, bargain or sell" the property to David L. Fulbright. At most, it is but a valid receipt for the purchase price, and at most could only operate to convey the equitable title, leaving the legal title to be afterward acquired by suitable action in a proper court.

On the sufficiency of this so-called deed we are cited by respondents to the following Missouri cases, not one of which are in point or even discuss the question: Linville v. Greer, 165 Mo. 380; McKinney v. Settles, 31 Mo. 541; Long v. Wagoner, 47 Mo. 178; Jennings v. Brizendine, 44 Mo. 332, l. c. 335; Bruensmann v. Carroll, 52 Mo. 313; Fosburgh v. Rogers, 114 Mo. 122, l. c. 134; Peter v. Byrne, 175 Mo. 233; Hunter v. Patterson, 142 Mo. 310.

The Fosburg v. Rogers case is a deed of adoption, and of course the discussion there is not *apropos* here. In the others the deeds under discussion all contain the usual words of conveyance.

In Pierson v. Dee, 2 Ind. 123, a very similar instrument came up for consideration. Omitting the unnecessary parts we shall parallel the instrument at bar with the deed in the Indiana case. This parallel speaks for itself and thus shows:

| THE PAINE DEED. | THE FULBRIGHT DEED. |
|---|---|
| Received of *John Paine*, $25 (twenty-five dollars) for my interest in the following described tract of land, | I, Wm. D. Fulbright, etc., for and in consideration of $1600, received to my full satisfaction of D. L. Fulbright, the receipt |
| [Describing it]. | whereof is acknowledged to be in full payment of the purchase |
| Given under my hand and Seal, etc. | price of the following described tract of land (describing it). To |
| (Signature). | have and to hold the aforesaid premises, etc. |
| | Given under my hand and Seal, etc. |
| | (Signature). |

Of the Pain deed the Indiana court said: "It is also claimed, on the authority of Gambril v. Doe, 8 Blackf. 140, that the instrument executed by Thomas Bronaugh to Paine, conveyed the legal estate in the lands, and being older than one of the deeds to Turner, showed title out of Bronaugh at the time of said conveyance to Turner. But said instrument to Paine is widely different from that in the case cited, and contains no words of conveyance whatever. It did not convey the legal title."

In Brown v. Mantar, 21 N. H. 528, the court had under consideration the following instrument, claimed to be a deed:

"Know all persons, etc., that I, Hannah Nichols, etc., in consideration of the sum of one hundred dollars paid to me by Silas Sweet, etc., their heirs and assigns forever, all the right, title I have to a certain piece of land (describing it). To have and to hold premises to them the said Silas and Lemuel, their heirs and assigns forever, hereby engaging to warrant the same to them and their heirs and assigns against all persons claiming by, from, or under me, my heirs and assigns."

That court after a careful review of the case law, thus spoke of the above instrument: "Now in the present case, a tract of land is described in the premises, but it is not granted. So far as the premises are concerned, it remains in the person who executed the deed. The habendum can have no effect upon an estate which is not granted at all. It cannot of itself convey an estate, for that would be contrary to the rules of law, and to make the instrument effectual as a conveyance of land, the habendum must be regarded as a grant of the land. This we cannot do without striking out a new path independent of the authorities, and that, of course, we have no right to do. The instrument, then, must be regarded as containing merely a description of land, and is void as a conveyance so

far as regards the operative power of the premises and the habendum.''

This instrument, like the one involved in the Indiana case, is fully as broad and comprehensive as the one at bar.

To like effect is Brewster on Conveyancing, sec. 71:

''Nevertheless, it often happens that title is not transferred by an instrument probably intended to transfer it, because there are no words in it sufficient to give it effect as a conveyance.

''Even if the instrument purports in form to be a deed of indenture, duly signed, sealed and acknowledged, but the only operative words in it are 'warrant and defend unto C. D., her heirs and assigns, forever, the receipt whereof is hereby acknowledged' it would not operate as a conveyance of the real estate described in it.

''And 'waive and renounce' are not words of conveyance sufficient to convey title.

''In some States statutes provide that any instrument in writing signed by the grantor is effectual to transfer the legal title if such was the intention of the grantor to be collected from the whole instrument. Such a statute, however, is not intended to dispense with operative words: it simply imposes upon the courts the duty of construing liberally the words of transfer, hence, even under such statutes, some words of conveyance are necessary.''

Discussing their statutes which require the courts to get at the intention of the grantor in instruments effecting real estate by taking the whole instrument into consideration, the Supreme Court of Alabama, in Webb v. Mullins, 78 Ala. 1. c. 113, says: ''At common law, a deed must contain words of grant, release or transfer, in order to pass the legal title to the land designed to be conveyed. The title to land can be transferred from one person to another only by ap-

posite and appropriate language. It was not the intention of the statute to dispense with the use of any words whatever, operative to convey. By the statute, the duty is imposed upon the courts to liberally construe the words employed in the conveyance as *words of transfer* and give them effect and operation according to the intention of the grantor, to be collected from the entire instrument. There must, however, be some words intended as words of conveyance. They cannot be supplied by judicial interpolation.''

In 13 Cyc. 537, we find this rule stated: ''Although there are certain formal parts usual to deeds, yet it is not absolutely necessary that a deed should contain all these parts, it being sufficient that the matter written should be legally and orderly set forth, by words which clearly specify the agreement and meaning of the parties and bind them. Nor is any prescribed form essential to the validity of a deed, and a deed informally drawn will convey the fee. Nor need the nature of the estate which the grantor had be set out. So a defective deed will operate to convey as a release the fee to a grantee in possession to the exclusion of a subsequent grantee of the same land. And a statutory provision as to what shall constitute a good deed does not imply that it cannot otherwise be made. *The preceding rules, however, do not preclude the necessity of using words of conveyance, which are apt and proper, expressive of an intention of the parties to be bound, and sufficient to show an intention to convey.''*

In a late Indiana case, Hummelman v. Mounts, 87 Ind. 179, ELLIOTT, J., had under consideration this instrument: ''This indenture witnesseth, that I, Jacob Smith, of Washington county, Indiana, warrant and defend into Christian Smith, of the same place, and to her heirs and assigns, the receipt of which is hereby acknowledged, the following real estate'' (here follows a description of the land), ''on this con-

dition: I, the said Jacob Smith, is to have and to hold full possession of the above described lands during my natural life, and to hold appurtenances unto her and her heirs and assigns forever. Witness the hand and seal of the said Jacob Smith this 19th day of March, 1862."

The instrument was duly acknowledged as a deed. It was held to be inoperative as a deed. In discussing the question that learned jurist said:

"While it is true that if in any part of the instrument apt words of conveyance are used the instrument will be treated as a deed, it is also true that if no such words can be found in any part it will be deemed utterly devoid of force. [Davis v. Davis, 43 Ind. 561.]

"Instruments will be so construed as to carry into effect the intention of the parties, but there must always be sufficient words to enable the courts to ascertain from the instrument what this intention was. Courts cannot, however, make contracts for the parties. It is not their province to write in an instrument words which will make it operate as a deed, where none of that character have been written by the parties themselves. The rule that courts will so construe an instrument as to make it effective does not mean that courts shall inject into it new and distinct provisions. The instrument before us contains no words of conveyance, and we have no authority to put any into it. If the appellant was seeking the correction of a mistake, or the reformation of a writing, we should have quite a different case; but he is not doing this. He is simply affirming that the instrument is, on its face, a valid and effective deed."

We are clearly of the opinion that the instrument we have before us in this case is not sufficient to convey the legal title. Even if it convey an equitable title it cannot avail plaintiff in this action of ejectment. [Kingman & Co. v. Sievers, 143 Mo. 519.]

Plaintiffs have by their own evidence shown an outstanding legal title and this defeats a plaintiff in ejectment. Plaintiffs undertook to deraign title from the General Government down to them, but failed to show a *legal title*. Under such circumstances defendant's admitted possession defeats their action. [Duncan v. Able, 99 Mo. 188; Snuffer v. Howerton, 124 Mo. 637.]

For this reason, we say that the judgment should be reversed and the cause remanded with directions to enter judgment for defendant.

III. What we have just said makes a final disposition of the case. But if we should be in error about that, which we cannot under authority concede, yet the case should be at least remanded without directions.

The judgment in this case is attacked and we think rightfully so. Ejectment is an action for the possession of real estate. The principal question to be determined and adjudicated is that of possession. Neither the verdict of the jury nor the judgment of the court is responsive to that issue. The verdict is incorporated in the judgment and the judgment so far as material thus reads:

"And afterwards, on the same day, the said jury having agreed upon a verdict, returns into open court and render to the court their verdict, which said verdict is in the following words to-wit: 'We the jury find the issues in favor of the plaintiffs, and we assess plaintiffs' damages at the sum of seventy-five dollars, and we further find the reasonable rental value of the premises to be one dollars per month until possession is given. O. D. Long, Foreman.'

"It is therefore considered, adjudged and ordered by the court that plaintiffs have and recover of and from the defendants the sum of seventy-five dollars as debt and damages, and one dollar per month until

possession is given aforesaid assessed by the jury, together with all costs in this case laid out and expended for which execution may issue.''

The land is neither described in the verdict nor in the judgment. The judgment itself does not even adjudge that plaintiffs are entitled to the possession of this or any other land. It is a pure money judgment. Speaking to this question, VALLIANT, J., in Benne v. Miller, 149 Mo. l. c. 244, said:

''The verdict rendered by the jury was not sufficiently certain. A verdict should so describe the land intended to be recovered that the description copied into the writ will of itself show the sheriff the land he is to take from defendant and restore to plaintiff. There can be no other description of the property in the judgment of the court than that in the verdict and there can be no other description in the writ. If that is not sufficient, it cannot be aided as was attempted in this case by having the county surveyor decide what the jury may have intended but failed to express. The burden is on the plaintiff to furnish evidence of such character as to enable the jury to render a self-demonstrating verdict; if the evidence is not sufficient in that respect, there can be no verdict for plaintiff.

''The judgment of the circuit court is reversed and the cause remanded to be retried according to the law as herein expressed.''

The same judge in Brummell v. Harris, 148 Mo. l. c. 446, said: ''There is one other error to be guarded against on the retrial of this case, if the verdict should be for the plaintiff. The judgment must follow the verdict, and the writ of possession must follow the judgment. Therefore, the verdict must so describe the land which the plaintiff recovers, as that the description alone will show the sheriff exactly what he is to take from defendants and give to plaintiff. It is not sufficient to refer to evidence whereby the sheriff may ascertain what the jury intended to find but

failed to express. And the burden is on the plaintiff to give the jury such fixed monuments or official documentary data as will enable them to describe the land they intend him to recover with so much certainty that the sheriff, without other evidence, may execute the writ. The jury's verdict in this case described the land plaintiff was to recover as 'a strip of land belonging to plaintiff, varying in width, situated between the fence now standing and Brown's survey, the same being on the east side of,' etc., describing plaintiff's tract of land by the Government numbers. The reference to the fence now standing on the land is a sufficient designation of one side of the strip, but 'Brown's survey' is too indefinite and 'varying width' is too indefinite.''

In an earlier case, Franklin v. Haynes, 139 Mo. l. c. 314, BRACE, J., said: ''The boundaries of the land really in dispute are not indicated by anything contained in the verdict or judgment, and an execution upon this judgment would afford no guide whatever to the officer seeking to execute it, as to what land in the possession of defendant he was to restore to the possession of the plaintiff, and not being susceptible of intelligent execution, ought to be set aside. [Robertson v. Drane, 100 Mo. 273.]''

Under the head of the ''Form, Requisites, and Sufficiency,'' of judgment in ejectment, 15 Cyc. 176, thus speaks: ''The land should be designated or described with certainty, sufficient to enable a writ of possession to be executed. And it has been held that the particular estate or interest should also be designated.''

The judgment at bar does not conform to the issues raised in ejectment, i. e., were plaintiffs entitled to the possession of the land in dispute. It failed to find that they are entitled to possession. It fails to describe any land. No intelligible writ of restitution could be issued thereon. The judgment should not

only find that plaintiffs are entitled to the possession of the land, but it should describe the land with such accuracy as will enable the issuance of an intelligible writ of restitution. For this error the case would at least have to be reversed and remanded, but under . our views as expressed in paragraph two hereof, this matter is of but little moment.

The trouble with the majority opinion is, that it makes a verdict for the jury. The jury has never said by their verdict that the plaintiffs are entitled to the particular land, describing it. The cases, supra, would indicate that such is required, and to my mind the distinction drawn by my brother is not well taken. For these reasons I dissent.

PER CURIAM.—On a motion for rehearing appellant insists we committed error in the particular of directing the lower court to amend the verdict of the jury.

This insistence travels on a misapprehension. Our directions were to the lower court to amend the judgment on the verdict, not the verdict itself.

Other questions raised by that motion are considered in the opinion and disposed of. We remain satisfied. The motion is overruled. *Woodson* and *Graves, JJ.,* dissenting; *Valliant, C. J.,* not sitting.